PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

INTERNATIONAL SCIENCE &
TECHNOLOGY INSTITUTE,
INCORPORATED,
Plaintiff-Appellant,

v.

No. 96-1142

INACOM COMMUNICATIONS,
INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-1229-A)

Argued: October 29, 1996

Decided: February 11, 1997

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Williams and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** John Thomas Ward, WARD, KERSHAW & MINTON,
Baltimore, Maryland, for Appellant. John Patrick Passarelli,
MCGRATH, NORTH, MULLIN & KRATZ, P.C., Omaha, Nebraska,
for Appellee. **ON BRIEF:** Thomas J. Minton, WARD, KERSHAW

& MINTON, Baltimore, Maryland; Mark Rollinson, Leesburg, Virginia, for Appellant. Patrick E. Brookhouser, Jr., MCGRATH, NORTH, MULLIN & KRATZ, P.C., Omaha, Nebraska; Scott A. Fenske, THOMPSON, HINE & FLORY, Washington, D.C., for Appellee.

_____

## OPINION

NIEMEYER, Circuit Judge:

We today reach the somewhat unusual conclusion that state courts have exclusive jurisdiction over a cause of action created by federal law. Holding that the states have been given, subject to their consent, exclusive subject matter jurisdiction over private actions authorized by the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, we affirm the district court's ruling dismissing this case.

I

In 1991, Congress amended the Communications Act of 1934, 47 U.S.C. § 201 et seq., with the enactment of the Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ([f]ax) machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968.

The relevant section of the TCPA provides, "It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C).

The TCPA creates a private right of action to obtain an injunction, 47 U.S.C. § 227(b)(3)(A), and to recover the actual monetary damages or $500, whichever is greater. 47 U.S.C. § 227(b)(3)(B). If the

2

court finds that the defendant "willfully or knowingly" violated the TCPA, it may treble the damage award. 47 U.S.C.§ 227(b)(3). In creating a private right of action, the TCPA authorizes a plaintiff to file suit "if otherwise permitted by the laws or rules of court of a State . . . in an appropriate court of that State." 47 U.S.C.§ 227(b)(3). The TCPA also authorizes state attorneys general to bring civil actions on behalf of their state's residents to obtain an injunction against such calls and to recover monetary damages. 47 U.S.C.§ 227(f)(1). The TCPA provides that the federal district courts have "exclusive jurisdiction" over actions brought by state attorneys general. 47 U.S.C. § 227(f)(2). Finally, the TCPA also authorizes the Federal Communications Commission to intervene as of right in any state attorney general's action. 47 U.S.C. § 227(f)(3).

II

During the summer months of 1995, International Science & Technology Institute, Inc. ("International Science") received at its fax machine several unsolicited advertisements for discount long-distance telephone service from Inacom Communications, Inc. ("Inacom"). International Science claims that Inacom sent "thousands of such unsolicited advertisements to small business enterprises throughout the United States in knowing and willful violation of the [TCPA]." Proceeding under the TCPA and invoking federal-question jurisdiction granted by 28 U.S.C. § 1331, International Science filed a class action suit in the district court, demanding $500 for each violation -- or $1,500 if the court were to find the violation willful -- and praying for injunctive relief against future unsolicited advertising. On Inacom's motion, the district court dismissed International Science's complaint for lack of subject matter jurisdiction, ruling that private actions authorized by the TCPA may be filed only in state courts. The court explained:

> The language in § 227(b)(3) is unambiguous. The statute clearly places jurisdiction for a private right of action in the state courts, just as it places jurisdiction for actions brought by the State or the FCC in the District Courts of the United States. Contrary to plaintiff's assertion, there is no ambiguity created because Congress omitted the phrase "exclusive jurisdiction" from § 227(b)(3).

3

In response to International Science's argument that the statute did not make state jurisdiction exclusive and that federal jurisdiction could therefore be implied, the district court ruled that it could not imply a federal right of action when Congress had expressed an intent to create only a right of action in state courts.

On appeal, International Science makes three arguments: (1) that the permissive language of 47 U.S.C. § 227(b)(3) that a private action may be brought in state courts does not make state court jurisdiction exclusive; (2) that a federally created cause of action "arises under" federal law within the meaning of 28 U.S.C. § 1331 granting district courts federal-question jurisdiction; and (3) that an exclusive jurisdictional grant to state courts would violate both the Equal Protection Clause of the Fourteenth Amendment and the Tenth Amendment.

III

To discern whether Congress intended to authorize jurisdiction over private actions exclusively in state courts, we first turn, as we must, to the TCPA's text. See, e.g., New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Insurance Co., 115 S. Ct. 1671, 1677 (1995) (in determining congressional intent, analysis begins with interpretation of the statutory text and "move[s] on, as need be, to the structure and purpose of the Act in which it occurs"). In relevant part, the TCPA provides that "a person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" an action for violation of the TCPA's ban on unsolicited fax-advertising. 47 U.S.C. § 227(b)(3) (emphasis added). In providing that a private person "may bring" a TCPA action in an appropriate state court, Congress authorized state courts to enforce the right it created. In using the customary "may" language for conferring jurisdiction,[1] Congress did not prescribe that

_____

[1] See, e.g., Age Discrimination in Employment Act, 29 U.S.C. § 626(c)(1) ("Any person aggrieved may bring a civil action in any court of competent jurisdiction" (emphasis added)); Clean Water Act, 33 U.S.C. § 1319(b) ("Any action under this subsection may be brought in the district court of the United States" (emphasis added)); Federal Employees Liability Act, 45 U.S.C. § 56 ("an action may be brought in a district court of the United States" (emphasis added)); Racketeer Influ-

4

an action must be brought in court; rather it authorizes jurisdiction by stating that an action may be brought there. As International Science observes, it cannot be disputed that the term "may bring" is permissive, simply authorizing suit in state court by a person who elects to enforce the federal right. Use of the term "may" does not itself confer exclusive jurisdiction on the court mentioned. See, e.g., Tafflin v. Levitt, 493 U.S. 455, 460-61 (1990) (the grant of jurisdiction to federal courts through the phrase, "suits of a kind described `may' be brought in federal district courts," "does not operate to oust a state court from concurrent jurisdiction over the cause of action").

When, however, the permissive authorization extends only to courts of general jurisdiction, that authorization cannot confer jurisdiction on unmentioned courts of limited jurisdiction, which require a specific grant. If a federal statute permissively authorizes suit in federal court, that authorization does not of necessity preclude suit in state courts of general jurisdiction, which are presumed competent unless otherwise stated. See Tafflin, id . But the contrary assertion cannot be true. If a statute authorizes suit in state courts of general jurisdiction through the use of the term "may," that authorization cannot confer jurisdiction on a federal court because federal courts are competent to hear only those cases specifically authorized. See Sheldon v. Sill, 49 U.S. (8 How.) 441, 449 (1850) (inferior federal courts only have jurisdiction which Congress confers).

Thus, when International Science argues that the Supreme Court's holding in Tafflin has foreclosed our finding exclusive jurisdiction in state court for private TCPA actions, it fails to recognize that the circumstances in Tafflin are the reverse of those in the case before us. While state courts are presumed to have jurisdiction over federally created causes of action unless Congress indicates otherwise, see Tafflin, 493 U.S. at 461 ("mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction"), federal courts require a specific grant of jurisdiction, see Sheldon, 49

_____

enced and Corrupt Organizations Act, 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court" (emphasis added)).

5

U.S. (8 How.) at 449. In light of this difference between the federal and state courts, it is meaningful that Congress explicitly mentioned only state courts in 47 U.S.C. § 227(b)(3) because under usual circumstances, mentioning state courts is unnecessary to vest them with concurrent jurisdiction.

Accordingly, we conclude that when, in § 227(b)(3) of the TCPA, Congress authorized jurisdiction over private actions in state courts without mentioning federal courts, it did not intend to grant jurisdiction over TCPA claims in federal district courts.

We are further confirmed in this construction of § 227(b)(3) by the fact that the TCPA, while authorizing state court jurisdiction for private rights of action, confers exclusive federal jurisdiction over actions by states attorneys general. See 47 U.S.C. § 227(f)(2) ("the district courts of the United States . . . shall have exclusive jurisdiction over all civil actions brought under this subsection" (emphasis added)). We find it significant that in enacting the TCPA, Congress wrote precisely, making jurisdictional distinctions in the very same section of the Act by providing that private actions may be brought in appropriate state courts and that actions by the states must be brought in the federal courts. These jurisdictional distinctions are even more significant in light of the rest of the Communications Act where Congress provided explicitly for concurrent jurisdiction when it so intended. See 47 U.S.C. § 214(c) (authorizing injunction by any court of general jurisdiction for extension of lines or discontinuation of services contrary to certificates of public convenience and necessity); 47 U.S.C. § 407 (authorizing suit in federal court or state court of general jurisdiction for common carrier's failure to comply with order of payment); 47 U.S.C. § 415(f) (establishing one-year limitation on suits brought in federal or state courts to enforce Commission order for payment of money); 47 U.S.C. § 553(c)(1) (authorizing suit in federal court or any other court of competent jurisdiction for unauthorized cable reception); 47 U.S.C. § 555(a) (authorizing suit in federal court or state court of general jurisdiction to review actions by franchising authority); 47 U.S.C. § 605(e)(3)(A) (authorizing civil action in federal court or any other court of competent jurisdiction for unauthorized publication). Thus while Congress has in the Communications Act explicitly expressed its intent to provide concurrent jurisdiction, it did not do so in 47 U.S.C. § 227(b)(3).

6

Finally, the legislative history of the TCPA supports our interpretation that Congress intended that private actions under 47 U.S.C. § 227(b)(3) be treated as small claims best resolved in state courts designed to handle them, so long as the states allow such actions. Senator Hollings, the sponsor of the bill, explained the relatively late addition of the § 227 private right of action as follows:

> The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. . . .

> Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.

137 Cong. Rec. S16205-06 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). While Senator Hollings did not explicitly say that only state court jurisdiction was appropriate, we believe the clear thrust of his statement was consistent with the bill's text that state courts were the intended fora for private TCPA actions.

International Science argues, notwithstanding, that a congressional intent to establish concurrent jurisdiction for private civil actions in both state and federal courts is manifested through its preemptive occupation of the field of interstate telecommunications. International Science states, "federal courts have exclusive jurisdiction in respect of essentially all matters arising under chapter 5" of the Communica-

7

tions Act, citing <u>Harrison Higgins, Inc. v. AT&T Communications, Inc.</u>, 697 F. Supp. 220, 222 (E.D. Va. 1988). International Science's reliance on the preemption principles of <u>Harrison Higgins</u>, however, is misplaced. The district court in <u>Harrison Higgins</u> decided that state substantive claims were preempted by the Communications Act, not that such preemption affected state court jurisdiction. Indeed, unless Congress provides that federal jurisdiction shall be exclusive, claims based on substantive federal law may be brought in state court even though the substantive federal law preempts state law. <u>See Dowd Box Co. v. Courtney</u>, 368 U.S. 502 (1962). In short, regardless of whether the Communications Act preempts substantive state law, state courts may hear cases arising under the Act except where a contrary congressional intent appears. No such intent appears in the TCPA. Indeed, it explicitly says that state courts may hear private actions based on substantive federal rights. <u>See</u> 47 U.S.C. § 227(b)(3). In any event, International Science's preemption argument must be rejected at its beginning because Congress stated that state law is not preempted by the TCPA. <u>See</u> 47 U.S.C. § 227(e) ("nothing in this section . . . shall preempt any State law that imposes more restrictive intrastate requirements . . . <u>or</u> which prohibits" certain enumerated practices (emphasis added)).

Accordingly, when Congress provided in § 227(b)(3) of the TCPA that private civil actions "may" be brought in the appropriate courts of the states, it did not intend to confer concurrent jurisdiction on the United States district courts.

IV

International Science contends that, even if the TCPA does not itself provide for federal jurisdiction over private actions, the general federal-question jurisdictional statute, 28 U.S.C.§ 1331, is sufficient to confer jurisdiction on the district court because a TCPA claim "arises under" federal law. To resolve this question, we need to determine the scope of 28 U.S.C. § 1331 and its relationship to specific jurisdictional statutes such as that involved here, 47 U.S.C. § 227(b)(3).

While Article III of the Constitution authorizes judicial power of "cases, in law and equity, <u>arising under</u>" (emphasis added) the Con-

8

stitution, laws, and treaties of the United States, the district courts have only that jurisdiction that Congress grants through statute. See Sheldon, 49 U.S. (8 How.) at 449. Even though Congress has conferred general federal-question jurisdiction on the district courts under 28 U.S.C. § 1331 in terms similar to the constitutional provision -- "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" -- the term "arising under" in the statute is narrower than the similarly defined constitutional power. See Verlindin B.V. v. Central Bank of Nigeria, 461 U.S. 480, 495 (1983). Because federal-question jurisdiction ultimately depends on an act of Congress, the scope of the district courts' jurisdiction depends on that congressional intent manifested in statute.

Congress gave federal-question jurisdiction to district courts under 28 U.S.C. § 1331 to hear "only those cases in which a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983); see also Ormet Corp. v. Ohio Power Co. , 98 F.3d 799, 806 (4th Cir. 1996). But in the "vast majority" of cases where federal-question jurisdiction exists, federal law creates the plaintiff's right of action. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986). International Science maintains that this case is among that "vast majority" because federal law creates the cause of action which it now asserts. See American Well Works Co. v. Wayne & Bowler Co., 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action").

It is true that, as a general matter, a cause of action created by federal law will properly be brought in the district courts. But "despite the usual reliability of the [principle that`a suit arises under the law that creates the cause of action,' the Supreme] Court has sometimes found that formally federal causes of action were not properly brought under federal-question jurisdiction." Merrell Dow, 478 U.S. at 815 n.12. For example, in Shoshone Mining Co. v. Rutter, 177 U.S. 505 (1900), the Supreme Court held that there was no federal-question jurisdiction over suits authorized by federal statute to determine mining claims. The Court found that, notwithstanding the federal statu-

9

tory basis, Congress intended that because of the predominance of state issues the cases be litigated in state courts unless there was diversity of citizenship. Id. at 511; see also Blackburn v. Portland Gold Mining Co., 175 U.S. 571, 578-79, 587 (1900). We have similarly concluded that Congress intended that private TCPA cases be litigated in state courts, if the state consents.

Moreover, the dominant reason that Congress created a private TCPA action at all was out of solicitude for states which were thwarted in their attempts to stop unwanted telemarketing. Congress found in the statute:

> Over half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations; therefore, Federal law is needed to control residential telemarketing practices.

Pub. L. No. 102-243, § 2(7), 105 Stat. 2394 (1991). See also Sen. R. No. 102-178, at 3 (1991), reprinted in 1991 U.S.C.C.A.N. at 1970 ("States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls"); id. at 5, reprinted in 1991 U.S.C.C.A.N. at 1973 ("Federal action is necessary because States do not have the jurisdiction to protect their citizens against those who use these machines to place interstate telephone calls"). Thus, although Congress created the private TCPA action, it was from the beginning a cause of action in the states' interest.

International Science argues, nevertheless, that to construe 47 U.S.C. § 227(b)(3) to lodge private causes of action only in state courts is repugnant to the language of § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution [or] laws . . . of the United States." (Emphasis added). It is clear, however, that § 1331 is a general federal-question statute, which gives the district courts original jurisdiction unless a specific statute assigns jurisdiction elsewhere. For example, "takings" claims in excess of $10,000-- undoubtedly "arising under the Constitution" as the term is used in § 1331 -- have been

10

assigned exclusively to the Court of Federal Claims. <u>See</u> 28 U.S.C. § 1491(a)(1) (granting Court of Federal Claims jurisdiction) and 28 U.S.C. § 1346(a)(2) (granting district courts concurrent jurisdiction if the claim does not exceed $10,000);**2** <u>see also</u> 28 U.S.C. § 1498(a) (patent and copyright claims against United States). And suits "commenced under" § 516 of the Tariff Act of 1930, 19 U.S.C. § 1516, can be brought only in the Court of International Trade. <u>See</u> 28 U.S.C. § 1581. <u>See also</u> 33 U.S.C. § 921(c) (vesting federal <u>courts of appeals</u> with original jurisdiction to review agency orders under Longshore and Harbor Workers' Compensation Act, 33 U.S.C.§ 901 <u>et seq.</u>, and the Black Lung Benefits program, 30 U.S.C. § 901 <u>et seq.</u>); 29 U.S.C. § 160(f) (vesting federal <u>courts of appeals</u> with original jurisdiction to review agency orders under National Labor Relations Act). Thus, the federal law that creates a cause of action may also manifest a particular intent to assign the cause of action to courts other than district courts, notwithstanding the general principle announced in § 1331. The only other court to address the issue before us found federal jurisdiction by ignoring that principle. <u>See Kenro, Inc. v. Fax Daily, Inc.</u>, 904 F. Supp. 912 (S.D. Ind. 1995).

International Science also argues, based on a misreading of <u>Merrell Dow</u>, that "federal courts [whether the district courts or other federal courts] always have jurisdiction of cases arising under federal law, if a private right of action is intended at all." Contrary to International Science's argument, the focus of <u>Merrell Dow</u> was not on such a principle but on the intent of Congress. After determining that "Congress did not intend a private federal remedy for violations of the statute that it enacted," 478 U.S. at 811, the Court in <u>Merrell Dow</u> concluded:

_____

**2** Notably, these statutes do not <u>explicitly</u> say that the Court of Federal Claims has exclusive jurisdiction over cases involving more than $10,000. One might conclude that district courts had concurrent jurisdiction by virtue of 28 U.S.C. § 1331. But Congress' explicit announcement of concurrent jurisdiction in 28 U.S.C. § 1346-- which would be superfluous if § 1331 already conferred concurrent jurisdiction -- leads quite naturally to the conclusion that jurisdiction of cases involving more than $10,000 lies exclusively in the Court of Federal Claims by virtue of 28 U.S.C. § 1491. Similarly, as we noted above, the fact that state courts are presumed to have concurrent jurisdiction to enforce federal laws leads naturally to the conclusion that the TCPA's explicit provision for state jurisdiction creates exclusive jurisdiction in state courts.

> [I]t would flout congressional intent to provide a private federal remedy for the violation of the federal statute. We think it would similarly flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a "rebuttable presumption" or a "proximate cause" under state law, rather than a federal action under federal law.

Id. at 812.

In the TCPA, Congress made explicit provision not only for federal actions by state attorneys general but also for state actions by private individuals. Had it not done so, we might be left with a question under Cort v. Ash, 422 U.S. 66 (1975), of whether the TCPA created an implied federal right of action cognizable as specified in 28 U.S.C. § 1331. But of course, in the TCPA Congress did manifest its specific intent that private TCPA actions should be brought in the state courts. As in Merrell Dow, "it would flout congressional intent [here] . . . to conclude that the federal courts might nevertheless exercise federal-question jurisdiction." 422 U.S. at 812. The particularized congressional intent manifested in 47 U.S.C. § 227(b)(3) governs, not the general proposition announced in § 1331.**3**

V

International Science argues finally that we should avoid finding exclusive state jurisdiction for private actions under 47 U.S.C. § 227(b)(3) because to do so raises constitutional questions. In particular, International Science argues that (1) finding exclusive state jurisdiction would result in a violation of the Equal Protection Clause of the Fourteenth Amendment and (2) interpreting the statute as creating

_____

**3** For precisely the same reason, we find no merit in International Science's argument, made first on appeal, that jurisdiction lies by virtue of 28 U.S.C. § 1337(a) which provides that "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. . . ." We also reject it because § 1337 was not asserted as a basis for jurisdiction in the district court.

12

exclusive state jurisdiction would infringe "the Tenth Amendment rights of states to govern without meddling from the federal government."

We agree with International Science's general assertion that courts should favor an otherwise permissible interpretation of a statute to avoid serious constitutional questions. See, e.g., Public Citizen v. Dept. of Justice, 491 U.S. 440, 466-67 (1989). But that axiom of statutory interpretation neither commands nor permits us to construe a statute in a way "plainly contrary to the intent of Congress." DeBartolo Corp. v. Florida Gulf Coast Trades Council , 485 U.S. 568, 575 (1988). As we have already concluded, Congress intended that private TCPA actions be brought, if at all, in state courts. Having reached that conclusion, we must address International Science's constitutional challenges.

A

International Science first contends that to read the statute as authorizing exclusive state jurisdiction over private causes of action would violate the Fourteenth Amendment guarantee of "equal protection of the laws." U.S. Const. amend. XIV, § 1. As a technical matter, however, any equal protection challenge to a federal law must arise under the equal protection component of the Fifth Amendment's Due Process Clause, not the Fourteenth Amendment which applies only to states. Regardless of whether the argument is made under the Fourteenth Amendment or the Fifth Amendment, however, the standard for defining the equal protection guarantee is the same. See, e.g., Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097, 2106-08 (1995) (reaffirming cases holding that Fifth Amendment equal protection component is substantively equivalent to Fourteenth Amendment's Equal Protection Clause).

International Science argues that interpreting 47 U.S.C. § 227(b)(3) to authorize jurisdiction exclusively in state courts would violate equal protection because the authorization is conditioned by the phrase, "if otherwise permitted by the laws or rules of a court of [that] State." Interpreting that clause to allow a private cause of action only where state law duplicates the TCPA's substantive prohibitions, International Science argues that where a state, as Virginia, for example,

13

has no statutory prohibition against unsolicited fax transmissions, citizens of that state would not have the benefit of the federal right, whereas citizens of other states would.

We believe that this argument is based on a misconstruction of the nature of the federal right. The clause in 47 U.S.C.§ 227(b)(3) "if otherwise permitted by the laws or rules of court of a State" does not condition the substantive right to be free from unsolicited faxes on state approval. Indeed, that substantive right is enforceable by state attorneys general or the Federal Communications Commission irrespective of the availability of a private action in state court. Rather, the clause recognizes that states may refuse to exercise the jurisdiction authorized by the statute. Thus, a state could decide to prevent its courts from hearing private actions to enforce the TCPA's substantive rights. To that extent, the existence of a private right of action under the TCPA could vary from state to state. That inequality, however, touches only a statutory permission to enforce privately the same substantive rights which both the state and the federal government can enforce in federal court through other mechanisms. Moreover, because the inequality arises from a classification that is not based on a fundamental right or impermissible characteristic such as race, religion, or natural origin, our review of the statutory provision under the Equal Protection Clause is narrow:

> The question is simply whether the legislative classification is rationally related to a legitimate governmental interest. Under this standard, the Act is entitled to a strong presumption of validity, and must be sustained if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Thomasson v. Perry, 80 F.3d 915, 928 (4th Cir. 1996) (citations, internal quotes, and emphasis omitted).

We believe that it is readily apparent from the congressional findings contained in the TCPA itself that Congress considered the effect that a newly created private right of action would have on judicial administration. Specifically finding that 18 million telemarketing calls are made daily, Pub. L. No. 102-243, § 2(3), 105 Stat. 2394 (1991), Congress understandably avoided opening federal courts to the mil-

14

lions of potential private TCPA claims by authorizing private actions only in state courts, presumably in the small claims courts. Similarly concerned over the potential impact of private actions on the administration of state courts, Congress included a provision to allow the states to prohibit private TCPA actions in their courts. We have no doubt that Congress has a legitimate interest in not overburdening state and federal courts. Nor can it be doubted that Congress has a legitimate interest in respecting the states' judgments about when their courts are overburdened. With those interests in mind and recognizing that other enforcement mechanisms are available in the TCPA, we believe Congress acted rationally in both closing federal courts and allowing states to close theirs to the millions of private actions that could be filed if only a small portion of each year's 6.57 billion telemarketing transmissions were illegal under the TCPA.

The fact that private actions under the TCPA may be permitted in some state courts and prohibited in others, as determined by the states, does not render the TCPA violative of the equal protection component of the Fifth Amendment's Due Process Clause.

B

International Science also argues that to interpret 47 U.S.C. § 227(b)(3) as providing for exclusive state court jurisdiction would "interfere with the Tenth Amendment rights of states to govern without meddling from the federal government." It argues that in creating exclusive state jurisdiction over private TCPA actions, Congress impermissibly has commandeered state courts. See New York v. United States, 505 U.S. 144 (1992).

While we agree that we must be sensitive to any effort by Congress to commandeer state resources, see New York, 505 U.S. at 155, we conclude that, in enacting the TCPA, Congress went out of its way to avoid overstepping the limits of the Tenth Amendment by explicitly recognizing the states' power to reject enforcement in their courts of the federally created right.

An act of Congress may violate the Tenth Amendment if it exceeds the scope of delegated powers or "invades the province of state sovereignty reserved by the Tenth Amendment." New York, 505 U.S. at

15

155. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress." Id. at 156.

In this case, Congress has not commanded state legislatures to legislate, as found impermissible in New York. See 505 U.S. at 178-79. Rather, it has, at most, directed that state courts enforce federal law, a requirement imposed on the states directly by the Supremacy Clause of Article VI, which provides that "the Laws of the United States which shall be made in Pursuance [of the Constitution] . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI. Indeed, since Testa v. Katt, 330 U.S. 386 (1947), it has been clear that state courts may not refuse to enforce federal claims which are similar to state claims enforced in the same courts, at least where the federal enactment provides for concurrent jurisdiction in state and federal courts. See also Federal Energy Regulatory Comm'n v. Mississippi, 456 U.S. 742, 760 (1982) (extending Testa to state regulatory body with adjudicatory functions).

It is true that in the case before us, we do not have the ameliorating fact that the TCPA provides for concurrent federal jurisdiction over private civil actions. To the contrary, in the TCPA Congress took the unusual step of making state court jurisdiction exclusive. Apparently recognizing that the exclusivity of state court jurisdiction could create a problem potentially left unresolved by Testa , Congress avoided any constitutional issue by refusing to coerce states to hear private TCPA actions, providing instead that a person or entity may, "if otherwise permitted by the laws or rules of court of a State," bring a TCPA action in an appropriate court of that state. 47 U.S.C. § 227(b)(3). States thus retain the ultimate decision of whether private TCPA actions will be cognizable in their courts. Indeed, if the state attorneys general refuse to bring action in federal court, enforcement of the TCPA will depend entirely on the Federal Communications Commission. Thus, under the TCPA, Congress respected the balance demanded by our system of federalism:

16

If state residents would prefer their government to devote its attention and resources to problems other than those deemed important by Congress, they may choose to have the Federal Government rather than the State bear the expense[and administrative burden] of [the TCPA], and they may continue to supplement that program to the extent state law is not pre-empted. Where Congress [thus] encourages state regulation rather than compelling it, state governments remain responsive to the local electorate's preferences; state officials remain accountable to the people.

New York, 505 U.S. at 168. In creating a conditional right of action to enforce the TCPA in state courts, Congress neither exceeded its delegated powers nor invaded the province of state sovereignty, which may still be exercised to prohibit the action. Indeed, from top to bottom, the private TCPA action reflects Congress' intent to enhance state sovereignty. Congress enacted the TCPA to assist states where they lacked jurisdiction; it empowered states themselves to enforce the TCPA in federal court; it authorized private enforcement exclusively in state courts; and it recognized state power to reject Congress' authorization.

VI

While Congress created, in the TCPA, an individual right to be free from unsolicited fax advertising, it provided for private actions to enforce the right exclusively in state courts. Accordingly, jurisdiction of the United States district courts over private TCPA actions may not be premised on the general federal-question jurisdiction conferred by 28 U.S.C. § 1331. We affirm the ruling of the district court dismissing this action for lack of subject matter jurisdiction.

AFFIRMED

17