ACCOUNTING OUTSOURCING, LLC, et al

v.

VERIZON WIRELESS PERSONAL COMMUNICATIONS, LP, etc.

Accounting Outsourcing, LLC, et al

v.

Kappa Publishing Group, Inc., et al

Dominion Motor Cars, Individually, etc.

v.

Satellink Paging (of Georgia), LLC, etc.

Accounting Outsourcing, LLC., et al

v.

Computers Across America, Inc.

Da Jo Nel's, Inc.

v.

Computers Across America, Inc.

Accounting Outsourcing, LLC, et al

v.

Rawlings Insurance Company

Beaulieau Plantation, Inc., et al

v.

Vacation Showroom, et al

Beaulieau Plantation, Inc., et al

v.

Textron Financial Corporation

Display South, Inc.

v.

Perry Johnson

No. CIV.A. 03–161–D–M3, CIV.A. 03–169–D–M3, CIV.A. 03–173–D, CIV.A. 03–208–D, CIV.A. 03–198–D, CIV.A. 03–358–D, CIV.A. 03–406–D, CIV.A. 03–421–D, CIV.A. 03–468–D.

United States District Court, M.D. Louisiana.

Sept. 4, 2003.

Keith D. Jones, Jones, Aaron & Smith, Philip Bohrer, Bohrer Law Firm, Gary P. Koederitz, Koederitz Law Firm, L.L.C., Stephen Todd Hoover, Hoover Law Firm, Baton Rouge, LA, for plaintiff/consolidated plaintiffs.

Michael W. McKay, Michael D. Lutgring, McKay, Williamson, Lutgring & Cochran, Baton Rouge, LA, Stephen Paul Strohschein, Dan E. West, McGlinchey Stafford PLLC, George J. Krueger, Franklin C. Love, Philadelphia, PA, Bracewell & Patterson, LLP, Houston, TX, Gerald A. Melchiode, Scott James Bradley, Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, for defendants.

Brett P. Furr, Elisabeth Quinn Zelden, Taylor, Porter, Brooks & Phillips, Stephen Paul Strohschein, Dan E. West, McGlinchey Stafford PLLC, Kirk A. Patrick, III, Heather A. Cross, Holly Jeanne Quick, Crawford Lewis, PLLC, Scott Cameron Barney, Chaffe, McCall, Phillips, Toler & Sarpy, Baton Rouge, LA, George J. Krueger, Franklin C. Love, Blank Rome, LLP, Philadelphia, PA, Alex J. Peragine, Peragine & Neill, L.L.C., Covington, LA, Gerald A. Melchiode, Scott James Bradley, Galloway, Johnson, Tompkins, Burr & Smith, John Francis Olinde, Chaffe, McCall, Phillips, Toler & Sarpy, Robin B. Cheatham, Michael Needham Mire, Adams & Reese, LLP, New Orleans, LA, Joseph C. Chautin, III, Hardy, Carey & Chautin, Metairie, LA, Mark Allen Balkin, Hardy, Carey & Chautin, LLP, Metairie, LA, for consolidated defendants.

## RULING

BRADY, District Judge.

This matter is before the court on plaintiffs' motions to remand.[1] The court has carefully considered the United States Magistrate Judge Docia L. Dalby's Report and Recommendation dated July 1, 2003 (doc. 51) and her Report and Recommendation dated July 26, 2003 (doc. 66). This court has also read the objections to the first Magistrate's Report and carefully researched the law applicable to this action.

### Introduction

As stated by the Magistrate Judge in her report, these consolidated claims present two jurisdictional issues of first impression.[2] The first issue is whether federal courts should have diversity jurisdiction to hear cases brought under the

1. NO. 03–161 (doc. 4); NO. 03–169 (doc. 7); NO. 03–173 (doc. 3); NO. 03–198 (doc. 5); NO. 03–208 (doc. 5); NO. 03–358 (doc. 5); NO. 03–406 (doc. 2); NO. 03–421 (doc. 3); NO. 03–468 (doc. 4).

2. Doc. 51 at page 2.

Telephone Consumer Protection Act of 1991 ("TCPA") or whether Congress intended TCPA claims to be brought exclusively in state court. The second issue is whether, given diversity jurisdiction over state law claims, a federal court can exercise supplemental jurisdiction over a TCPA claim. The second issue becomes moot if federal courts have diversity jurisdiction to hear TCPA claims, as supplemental jurisdiction is no longer needed.

After considering the parties' briefs and the scant case law available on the subject, the Magistrate Judge concluded that federal courts should not have diversity jurisdiction over claims brought under the TCPA.[3] With regard to the second issue, however, the Magistrate Judge concluded that federal courts should have supplemental jurisdiction over a TCPA claim when the parties bring state court claims pursuant to diversity jurisdiction.[4]

Having carefully reviewing this matter, this court finds that federal courts are not precluded from hearing TCPA claims when the parties are diverse. 28 U.S.C. § 1332 is an independent grant of jurisdiction designed to prevent discrimination against out-of-state defendants. This important and elemental basis of diversity jurisdiction does not disappear when the claim is brought under the TCPA. Accordingly, this court will not consider the second issue because supplemental jurisdiction over a TCPA claim is not needed if the claim is already properly before a federal court pursuant to § 1332.

### Background

These matters are substantially identical, with the exception of No. 03–198, which differs only in that the plaintiffs in that action have not asserted any state law claims in conjunction with the claim brought under the TCPA.

Each class action petition alleges that the named defendants sent plaintiffs unsolicited fax advertisements in violation of the TCPA.[5] The federal statute provides that a person may bring an action based on such a violation to recover for actual monetary loss or to receive $500 in damages for each such violation, whichever is greater.[6] Plaintiffs contend they are entitled to recovery of $500 or actual damages, whichever is greater, for each fax transmission. They additionally allege wilful or knowing violations and seek statutory trebling of the awards, pursuant to 47 U.S.C. § 227(b)(3). In the cases with state law claims, plaintiffs allege that the faxes violated Louisiana's counterpart to the TCPA, La. R.S. 51:1745, *et seq.*, and seek injunctive relief, damages, costs, and attorneys' fees.

The defendants removed these actions to federal court on the basis of diversity jurisdiction and, in the cases with parallel state law claims, on the basis of both diversity and supplemental jurisdiction. Plaintiffs timely moved to remand for lack of subject matter jurisdiction over the TCPA claims. In addition, plaintiffs contend that the court should abstain from considering any parallel state law claims brought based on diversity for three reasons: in deference to the Congressional intent in enacting the TCPA, to avoid splitting the suits between two different fora, and on the basis of *Colorado River* abstention.

---

**3.** Doc. 51 at p. 14–15.

**4.** *Id.* at p. 20.

**5.** *See* 47 U.S.C. § 227(b)(1)(C) (making it unlawful for any person within the United States to use a fax machine to send unsolicited advertisements).

**6.** 47 U.S.C. § 227(b)(3).

## Analysis

### I  Diversity Jurisdiction over TCPA Claims

As the Magistrate's Report makes explicit, the relevant case law on this subject is minimal, at best. The jurisdictional provision of the TCPA is unilluminating and states only that a person or entity may, if otherwise permitted by the laws or rules of court of a state, bring an action in an appropriate court of that state.[7] As a starting point, this court will discuss how that jurisdictional provision has been interpreted in the case law thus far.

Six United States Circuit Courts of Appeal, including the Fifth Circuit, have interpreted the jurisdictional provision of the TCPA to mean that Congress intended to refer private litigants under the TCPA to state court, and to preclude federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over such consumer suits.[8] Although the circuit court opinions often refer to state courts having "exclusive" jurisdiction over TCPA claims, none of the courts were called upon to address, nor did they address, whether TCPA claims could be heard in federal court pursuant to diversity jurisdiction.

Lacking any direct precedent, this court has found persuasive other district court decisions on this exact issue, as well as Supreme Court interpretation of jurisdictionally similar federal statutes. In 2000, the United States District Court for the Southern District of California issued an unpublished opinion in which the plaintiff, in a motion to remand, urged the court to extend the holding in *Murphey v. Lanier* to claims brought under diversity jurisdiction.[9] The district court refused to do so, stating, "[n]othing in the Ninth Circuit's analysis suggests that the TCPA *precludes* district courts from hearing private TCPA claims where some other independent basis for federal jurisdiction exists, such as diversity of citizenship or supplemental jurisdiction."[10] The court further explained its reasoning, stating that "Plaintiff's interpretation of the TCPA would create the anomalous result that state law claims based on unlawful telephone calls could be brought in federal court, while federal TCPA claims based on those same calls could be heard only in state court."[11]

This court finds the reasoning in *Kinder* persuasive. The *Kinder* court pointed out that state law claims based on the same facts and circumstances as those encompassing a TCPA claim could properly be brought in federal court if the parties were diverse and the requisite amount in controversy was satisfied pursuant to § 1332. This fact alone is reason enough to decline to extend the holding of the circuit court cases discussed above. One of the main reasons the TCPA was interpreted by the circuit courts to exclude federal question jurisdiction was because state courts provide a more appropriate forum for small value claims and plaintiffs appearing on their own behalf.[12] However, if the exact same claims, brought pursuant to state

---

7. *See id.*

8. *Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir.2000); *Foxhall Realty Law Offices, Inc. v. Telecomm. Premium Serv., Ltd.*, 156 F.3d 432, 437 (2d Cir.1998); *Erienet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 520 (3d Cir.1998); *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir.1998); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 510 (5th Cir.1997); *Int'l Science & Tech. Inst., Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146, 1158 (4th Cir.1997).

9. *Kinder v. Citibank*, 2000 WL 1409762, at *3 (S.D.Cal.2000).

10. *Id.*

11. *Id.*

12. *Inacom*, 106 F.3d at 1152–53 (citing the congressional record and the statements of Senator Hollings).

law, may be litigated in federal court based on diversity of the parties, it makes little sense to preclude a TCPA claim.

The next district court to discuss whether Congress intended for TCPA claims to be brought in federal court pursuant to diversity jurisdiction was the United States District Court for the District of South Carolina. In *Biggerstaff v. Voice Power Telecommunications*, the court ultimately held that it did not have diversity jurisdiction because of an insufficient amount in controversy on the TCPA claim by each member of the putative class.[13] However, in discussing the possibility of diversity jurisdiction, the court responded to the plaintiff's urging to extend *Inacom* to preclude federal TCPA claims based on § 1332 jurisdiction as well as claims based on § 1331.[14] In *Inacom*, the Fourth Circuit reasoned that § 1331, as a general jurisdictional statute, should yield to § 227(b)(3) of the TCPA, a specific jurisdictional statute.[15] The *Biggerstaff* court distinguished diversity jurisdiction from federal question on the basis that § 1332 is not a general statute but, rather, "an independent grant of jurisdiction designed to prevent discrimination against out-of-state defendants regardless of whether federal law is involved." [16]

In this case, the Magistrate Judge disagreed with the reasoning in *Biggerstaff* and found that § 1332, like § 1331, was instead a general statute which must yield to the specific jurisdictional provision of the TCPA. This court notes, however, that no matter how one may label the diversity statute, it exists for an independent and important reason, unrelated to the subject matter of the lawsuit. As the United States Supreme Court stated in *Erie v. Tompkins*, "diversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination in state courts against those not citizens of the state." [17] Therefore, it would take a much more clear and definitive statement from Congress to convince this court to remove a party's entitlement to a federal forum based on diversity.

In further consideration of this issue, this court also searched for other federal statutes which have been interpreted to preclude federal diversity jurisdiction. Although such statutes are not unprecedented, they are indeed rare. In 1934, Congress passed the Johnson Act.[18] The Act states,

"The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision where

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and

(2) The order does not interfere with interstate commerce; and

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State." [19]

**13.** 221 F.Supp.2d 652, 657 (D.S.C.2002).

**14.** *Id.* at 656–57.

**15.** *Inacom*, 106 F.3d at 1154 (noting that § 1331 is a general federal question statute, giving district courts original jurisdiction unless a specific statute assigns jurisdiction elsewhere).

**16.** *Biggerstaff*, 221 F.Supp.2d at 656 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

**17.** 304 U.S. 64, 74, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**18.** *See* 28 U.S.C. § 1342 (West 2003).

**19.** *Id.*

The plain language of the Johnson Act evidences a clear congressional directive to preclude federal subject matter jurisdiction based on diversity. Moreover, the legislative history of the Act makes clear that its purpose was to prevent out-of-state public utilities from challenging state administrative orders in federal court.[20]

Additionally, in 1948, Congress passed the Tax Injunction Act, which states, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."[21] Although the plain language does not specifically address federal court jurisdiction based on diversity, the legislative history reveals that Congress was seeking to "stop out-of-state corporations from using diversity jurisdiction to gain injunctive relief against a state tax in federal court..."[22] Additionally, the Supreme Court has noted that the principal purpose of the Tax Injunction Act is "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."[23]

By passing the Johnson Act and the Tax Injunction Act, Congress was responding to specific situations where allowing claims in federal court based on diversity would be unfair to some parties. Specifically, the Acts were designed to eliminate disparities between taxpayers who could obtain injunctive relief in federal court—namely out-of-state corporations asserting diversity jurisdiction—and local taxpayers who were left to litigate in state courts where taxpayers often had to pay first and litigate later.[24] The legislative history reveals that Congress had a reason for eliminating diversity jurisdiction; the usual concern of "discrimination in state courts against those not citizens of the state," articulated in *Erie*, was absent.

In contrast, neither the text nor the legislative history of the TCPA suggests any reason at all for eliminating federal jurisdiction when the parties are diverse. As discussed, the text of the jurisdictional portion of the TCPA is silent on the issue of federal jurisdiction. It merely states, "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State..."[25] In *Murphey, Foxhall Realty, Erienet, Nicholson, Chair King,* and *Inacom,* the circuit courts found that, in the larger context of the TCPA and the Communications Act, this language suggested that Congress did not intend for federal courts to have subject matter jurisdiction over these claims.[26] Nothing in the rea-

---

20. *See California v. Grace Brethren Church,* 457 U.S. 393, 410 n. 22, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (discussing Senate and House Reports, as well as the congressional debates of the Johnson Act).

21. 28 U.S.C. § 1341 (West 2003).

22. *Jefferson County, Alabama v. Acker,* 527 U.S. 423, 435, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).

23. *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981).

24. RICHARD H. FALLON & DANIEL J. MELTZER & DAVID L. SHAPIRO, THE FEDERAL COURTS AND THE FEDERAL SYSTEM CHAP. X, SEC. 1(B) (4th ed.1996).

25. 47 U.S.C. § 227(b)(3) (West 2003).

26. *See, e.g. Inacom,* 106 F.3d at 1151–52 (discussing how the word "may" in the TCPA cannot be read to confer federal subject matter jurisdiction because permissive authorization extends only to courts of general jurisdiction); *Chair King,* 131 F.3d at 512 (reasoning that the TCPA's specific authorization of state court jurisdiction should be construed as more than a confirmation of concurrent jurisdiction); *Foxhall Realty,* 156 F.3d at 436 (noting that Congress's specific jurisdictional distinctions elsewhere in the TCPA support the holding that Congress intended state courts to hear private actions).

soning of any of the courts' opinions, however, suggests it would be logical to extend that reasoning to eliminate diversity jurisdiction.

In fact, one provision of the TCPA suggests that Congress acknowledged the federal courts as a neutral forum. In 47 U.S.C. § 227(f)(2), entitled, "Exclusive jurisdiction of Federal courts," Congress provided that whenever a state official brings a civil claim on behalf of the residents of that state, the federal courts have jurisdiction. Although the legislative history is silent on this particular subsection of the TCPA, it is logical to assume that Congress was trying to provide defendants with a neutral forum, free from potential discrimination in state court. § 227(f)(2) therefore suggests that the TCPA is not the kind of statute where eliminating § 1332's independent grant of jurisdiction for diverse parties would make sense. There is no reason to assume Congress would want actions brought by state officials to be free from state court discrimination and, concurrently, allow out-of-state defendants to be subject to potential discrimination in private actions.

The legislative history of the TCPA also confirms this court's conclusion that the Act should not be interpreted to preclude diversity jurisdiction. In passing the Johnson and Tax Injunction Acts, Congress was concerned over fairness to in-state defendants and regulating a matter traditionally regulated by the states.[27] In contrast, the legislative history behind the TCPA reveals intentions much more basic and benign. The stated purposes of the TCPA are "to protect the privacy interests of residential telephone subscribers... and to facilitate interstate commerce by restricting certain uses of facsimile machines and automated dialers."[28] Although states had enacted similar "anti-fax advertising" legislation, federal action was needed because states do not have jurisdiction over interstate calls.[29] Unlike matters involving taxes and public utilities, matters involving fax transmission can hardly be deemed "traditionally regulated by the states."

Moreover, Congress's alleged purpose in eliminating federal subject matter jurisdiction for private rights of action was that "small claims [are] best resolved in state courts designed to handle them..." and that "small claims court would allow the consumer to appear before the court without an attorney."[30] These stated purposes are no longer relevant when parties have reached the $75,000 requisite amount required for diversity jurisdiction. For the foregoing reasons, this court concludes that Congress did not intend to preclude federal diversity jurisdiction pursuant to § 1332 for claims brought under the TCPA.

## II Diversity Jurisdiction: Satisfaction of the Basic Prerequisites

The Magistrate independently examined whether the citizenship requirement and jurisdictional amount were satisfied in these cases at the time they were removed. This court agrees with the Magistrate's conclusion that the plaintiffs and defendants are completely diverse in each case and that each case reached the jurisdictional amount threshold at the time of removal.

---

27. See Acker, 527 U.S. at 435, 119 S.Ct. 2069; Grace Brethren Church, 457 U.S. at 409, 410 fn. 22, 102 S.Ct. 2498.

28. Foxhall Realty, 156 F.3d at 437 (citing the congressional record).

29. Id.; Inacom, 106 F.3d at 1154.

30. Chair King, 131 F.3d at 513 (citing 137 CONG. REC. S. 16,204, 16,205–6 (daily ed. November 7, 1991) (statement of Senator Hollings)).

## III Abstention

As previously stated, the plaintiffs in these cases moved to remand for lack of jurisdiction over the subject matter on the TCPA claims. Plaintiffs further argued that this court should abstain from considering any parallel state law claims brought based on diversity for three reasons: in deference to the Congressional intent in enacting the TCPA, to avoid splitting the suits between two different fora, and on the basis of *Colorado River* abstention. In deciding that this court does, in fact, have subject matter jurisdiction over the TCPA claims based on diversity, this court disposes of plaintiffs' first two articulated reasons for considering the parallel state claims. This court must now consider plaintiffs' third and final argument and determine whether abstention would be appropriate in this matter.

The *Colorado River* abstention doctrine represents an "extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." [31] There are six factors the court should consider when deciding whether to abstain from exercising jurisdiction: (1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. [32]

In their motions to remand, the substance of plaintiffs' abstention argument surrounds factor number three, avoidance of piecemeal litigation. [33] In light of this court's conclusion that the TCPA claims may be properly heard in federal court pursuant to diversity jurisdiction, there will be no parallel state court litigation and no piecemeal adjudication in two different courts. Therefore, there is no basis under *Colorado River* or any other abstention doctrine for this court to refrain from hearing the state law claims or the TCPA claims.

## Conclusion

Accordingly, this court has subject matter jurisdiction to hear these consolidated claims and the motions by plaintiffs to remand (NO. 03–161 (doc. 4); NO. 03–169 (doc. 7); NO. 03–173 (doc. 3); NO. 03–198 (doc. 5); NO. 03–208 (doc. 5); NO. 03–358 (doc. 5); NO. 03–406 (doc. 2); NO. 03–421 (doc. 3); NO. 03–468 (doc. 4)) are hereby **DENIED**.

---

**31.** *Black Sea Investment, Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir.2000) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

**32.** *Id.*

**33.** *See* Motions to Remand at p. 10–12.