

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-1998

# ErieNet Inc v. Velocity Net Inc

Precedential or Non-Precedential:

Docket 97-3562

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"ErieNet Inc v. Velocity Net Inc" (1998). *1998 Decisions*. Paper 236.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/236

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 25, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3562

ERIENET, INC.; SANDRA MACKENZIE;
JOHN KNAUER; FRANK MEZLER, JR.,
        Appellants

v.

VELOCITY NET, INC.;
THOMAS DYLEWSKI; CHAD FERENACK

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 97-cv-00001E)

Argued April 27, 1998

BEFORE: ALITO, RENDELL, and GARTH, Circuit Judges

(Filed: September 25, 1998)

        Daniel J. Pastore [ARGUED]
        The McDonald Group
        456 West Sixth Street
        Erie, PA 16507-1216
         Counsel for Appellants

        Craig A. Markham [ARGUED]
        Elderkin, Martin, Kelly &
        Messina
        150 East 8th Street
        Box 1819
        Erie, PA 16501
         Counsel for Appellees

OPINION OF THE COURT

RENDELL, Circuit Judge.

This appeal requires us to consider the unique and apparently unprecedented question of whether federal district courts have jurisdiction over consumer lawsuits brought under a federal statute that creates a private cause of action, is silent as to whether such actions can be brought in federal courts, but expressly refers consumer claims to state courts. Appellant ErieNet, Inc., an Internet service provider, and the individual appellants, ErieNet subscribers, brought suit in federal district court under the private enforcement provision of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. S 227. Appellants allege that appellees VelocityNet, Inc., another Internet service provider, and its agents and employees sent unsolicited e-mail messages to ErieNet subscribers in violation of the TCPA. Because the TCPA refers such consumer suits to state courts, the district court concluded that it lacked subject matter jurisdiction and dismissed the case pursuant to Federal Rule of Civil Procedure 12(h)(3). We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291, and we will exercise plenary review. See Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1280 (3d Cir. 1993) (citations omitted). We will affirm.

I.

Enacted in 1991 as part of the Federal Communications Act, the TCPA seeks to deal with an increasingly common nuisance -- telemarketing. More than 300,000 solicitors call more than 18,000,000 Americans each day. See 47 U.S.C. S 227, Congressional finding No. 3. By 1991, over half the states had enacted statutes restricting the marketing uses of the telephone. However, Congress recognized that "telemarketers can evade [state] prohibitions through interstate operation; therefore, Federal law is needed to control residential telemarketing practices." 47 U.S.C. S 227, Congressionalfinding No. 7; see also S. Rep. No. 102-178, at 5 (1991), reprinted in,

1991 U.S.C.C.A.N. 1968, 1973 ("The Committee believes that Federal legislation is necessary to protect the public from automated telephone calls . . . Federal action is necessary because the States do not have the jurisdiction to protect their citizens against those who use these machines to place interstate telephone calls.").

Accordingly, Congress enacted the TCPA, which prohibits, inter alia, various uses of automatic telephone dialing systems, the initiation of certain telephone calls using artificial or prerecorded voices, and the use of any device to send an unsolicited advertisement to a telephone facsimile machine. See 47 U.S.C. S 227(b).1 Under S 227(f), states may bring civil actions in federal court on behalf of their residents for violations of the TCPA. In addition, the statute expressly creates a private right of action:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> (C) both such actions.

47 U.S.C. S 227(b)(3). Senator Hollings, the sponsor of the bill, stated:

> The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an

_____

1. Although this litigation relates to unsolicited e-mail messages, appellants seek to apply the provision of the TCPA prohibiting the use of any device to send an unsolicited advertisement to a telephone facsimile machine. Appellants contend that this provision applies to the facts of this case because the e-mail messages were sent by a computer, were unsolicited advertisements, and were sent to ErieNet's computer network, which constitutes a telephone facsimile machine within the meaning of the TCPA.

3

action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for state legislators to determine. Nevertheless, it is my hope that the States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. The consumer outrage at receiving these calls is clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue.

Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.

137 Cong. Rec. S16205-06 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings) (emphasis added).

Although actual monetary losses from telemarketing abuses are likely to be minimal, this private enforcement provision puts teeth into the statute by providing for statutory damages and by allowing consumers to bring actions on their own. Consumers who are harassed by telemarketing abuses can seek damages themselves, rather than waiting for federal or state agencies to prosecute violations. Although S 227(f)(1) of the statute does authorize states to bring actions on their citizens' behalf, the sheer number of calls made each day -- more than 18,000,000 -- would make it impossible for government entities alone to completely or effectively supervise this activity.

II.

We recognize at the outset that the circumstances of this case are unique. We are confronted with "an unusual

4

constellation of statutory features." Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 512 (5th Cir. 1997). A federal statute creates a private cause of action. The statute is not silent as to where such actions may be brought; rather, it refers potential plaintiffs to the state courts. Neither the text nor the legislative history makes any reference to federal courts. Furthermore, the statute does not appear to reflect any significant federal interest, or one that is uniquely federal. It does not reflect an attempt by Congress to occupy this field of interstate communication or to promote national uniformity of regulation. Rather, Congress recognized that state regulation of telemarketing activity was ineffective because it could be avoided by interstate operations. Federal legislation was necessary in order to prevent telemarketers from evading state restrictions. See Van Bergen v. Minnesota, 59 F.3d 1541, 1548 (8th Cir. 1995).

This statutory scheme is significant because a district court's federal question jurisdiction is dependent on an act of Congress. "While Article III of the Constitution authorizes judicial power of `cases, in law and equity, arising under' . . . the Constitution, laws, and treaties of the United States, the district courts have only that jurisdiction that Congress grants through statute." International Science & Tech. Inst., Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1153 (4th Cir. 1997) (citing Sheldon v. Sill, 49 U.S. 441, 449 (1850)). The question, therefore, is whether Congress has provided for federal court jurisdiction over consumer suits under the TCPA. To answer that question, we first examine whether the TCPA itself reflects Congress' intent to grant federal jurisdiction. If the TCPA does not reflect such an intent, we must then consider whether some other statute authorizes federal jurisdiction under these circumstances. In considering these questions, we keep in mind the "fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).

A.

Every court of appeals to consider the question has held that the TCPA does not grant federal court jurisdiction over

5

the private causes of action at issue in this litigation. See Nicholson v. Hooters of Augusta, Inc., 136 F.3d 1287, 1287–88 (11th Cir.), modified, 140 F.3d 898 (11th Cir. 1998); Chair King, 131 F.3d at 509; International Science, 106 F.3d at 1150. But see Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1164 (S.D. Ind. 1997) (rejecting the International Science analysis and finding federal jurisdiction over private enforcement actions under the TCPA). Appellants nonetheless argue that the statute does reflect Congress' intent to create a private right of action that may be brought in federal court, and that nothing in the text or legislative history expressly precludes federal court jurisdiction.

In interpreting a statute, we are charged with the duty to consider the provisions of the whole law, its object, and its policy. See United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993) (quoting United States v. Heirs of Boisdore, 49 U.S. 113, 122 (1849)). Furthermore, we must construe the statute " `so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant.' " Pennsylvania Medical Soc'y v. Snider, 29 F.3d 886, 895 (3d Cir. 1994) (quoting 2A Norman J. Singer, Sutherland Statutory Construction S 46.06, at 119–20 (5th ed. 1992) (citations omitted)). Guided by these principles, we join the Fourth, Fifth, and Eleventh Circuits in concluding that Congress intended that private enforcement suits under the TCPA be brought in state, and not federal, courts.

Appellants note that Congress stated only that private rights of action "may" be brought in state court. See 47 U.S.C. S 227(b)(3). Appellants argue that such permissive language does not limit jurisdiction to state courts, and therefore leaves federal jurisdiction intact. We decline to attribute this logic or intent to Congress. In Tafflin v. Levitt, 493 U.S. 455, 458–59 (1990), the Supreme Court recognized that there is a presumption in favor of state court jurisdiction over claims arising under federal law. The Court held that an express grant of federal jurisdiction over civil RICO claims did not oust the state courts of jurisdiction. See id. at 460–61. While state courts would

6

have had jurisdiction over private TCPA actions even if
Congress had made no reference to state courts, we
conclude that Congress referred these claims to state court
as forcefully as it could, given the constitutional difficulties
associated with Congress' mandating a resort to state
courts. See 137 Cong. Rec. S16205-06 (daily ed. Nov. 7,
1991) (statement of Sen. Hollings).

The appellants' argument that the permissive reference to
state courts implies the existence of federal jurisdiction is
undercut by the fact that there is no presumption of
jurisdiction in the federal courts. See Sheldon, 49 U.S. at
442 (noting that federal court jurisdiction must be
authorized by Congress). State courts are courts of general
jurisdiction, while federal courts are courts of only limited
jurisdiction. As the Fourth Circuit recognized, "[i]f a statute
authorizes suit in state courts of general jurisdiction
through the use of the term `may,' that authorization
cannot confer jurisdiction on a federal court because
federal courts are competent to hear only those cases
specifically authorized." International Science, 106 F.3d at
1151 (citing Sheldon, 49 U.S. at 449). The permissive
authorization of jurisdiction in state courts does not imply
that jurisdiction is also authorized in federal courts. For
Congress' reference to state courts to have any meaning, it
must reflect something other than a mere confirmation of
concurrent jurisdiction over private enforcement actions.
We believe that the most natural reading of this language is
that Congress intended to authorize private causes of
action only in state courts, and to withhold federal
jurisdiction.[2]
_____

2. Because of the differences between the respective jurisdictions of state
and federal courts, we do not place great reliance on Tafflin as setting
forth a doctrinal guide for our analysis here. It is in this respect that we
disagree with our dissenting colleague. The Supreme Court in Tafflin
traced the historical roots of concurrent jurisdiction, emphasizing the
principle that " `nothing in the concept of our federal system prevents
state courts from enforcing rights created by federal law.' " 493 U.S. at
459 (quoting Dowd Box Co. v. Courtney, 368 U.S. 502, 507-08 (1962)).
The Court thus recognized "a deeply rooted presumption" in favor of
concurrent jurisdiction over federal causes of action, and noted the rare
and unique situations in which that presumption will be held to have

7

Our review of the other provisions of the statute supports this reading. It is apparent from a review of the TCPA and the Communications Act that Congress consciously drew careful jurisdictional distinctions. For example, in S 227(f)(2) of the TCPA, Congress expressly mandates exclusive federal court jurisdiction over TCPA actions brought by states on behalf of their residents. The statute specifically addresses venue, service of process, and possible conflicts with FCC enforcement efforts. See 47 U.S.C. S S 227(f)(4) & (7). In S 227(b)(3), however, Congress does not even allude to these issues in connection with the private enforcement action at issue here. The Fifth Circuit has interpreted this as an indication of Congress' intent to limit such private actions to state courts. See Chair King, 131 F.3d at 512. In other parts of the Communications Act, where Congress intended to authorize concurrent jurisdiction, it did so expressly.3 Its failure to provide for

_____

been overcome. Id. Tafflin spoke only to the issue of whether state court jurisdiction, which is presumed, could be ousted or divested, while the issue before us is whether federal jurisdiction, which must be provided for by Congress, does in fact exist.

Thus, we believe that the reasoning of Tafflin does not, as the dissent asserts, transfer to the instant legislation which, in referring consumer suits to state courts, does not provide for any jurisdiction in federal court. Given the fact that state court concurrent jurisdiction is presumed, while federal jurisdiction must be provided for, the Tafflin reasoning is not easily borrowed in this context. Further, the Tafflin test for divestment is not susceptible to application under our facts because, again, the Tafflin Court was speaking only to the issue of overcoming the presumption of state court jurisdiction, not as is the case here, determining whether Congress intended federal courts to have jurisdiction under S 1331, or had indicated a contrary intention that jurisdiction should not lie in federal court under S 1331.

3. See 47 U.S.C. S 214(c) (any court of competent jurisdiction may issue injunction); 47 U.S.C. S 407 (authorizing suit for carrier's noncompliance with order for payment in United States district court or in any state court of general jurisdiction); 47 U.S.C. S 415(f) (establishing one year statute of limitations for petitions brought to enforce order for payment of money in federal or state court); 47 U.S.C. S 553(c)(1) (authorizing suit for unauthorized cable reception in United States district court or any other court of competent jurisdiction); 47 U.S.C. S555(a) (authorizing review of decisions of a franchising authority in United States district court or any state court of competent jurisdiction); 47 U.S.C. S 605(e)(3)(A) (authorizing suit for unauthorized publication in United States district court or any other court of competent jurisdiction).

concurrent jurisdiction under S 227(b)(3) of the TCPA is therefore significant. See Chair King, 131 F.3d at 512; International Science, 106 F.3d at 1152 (finding significance in Congress' failure to refer to federal jurisdiction in S 227, as compared to the express grants of concurrent jurisdiction in other parts of the Communications Act).

Finally, appellants argue that we should interpret S 227 as providing for a private cause of action in federal court because this is consistent with, and would serve, the underlying purposes of the TCPA to protect the public from telemarketing abuses, to supplement state jurisdiction over the proscribed activity, and to provide a private right of action. However, the mere need for federal legislation and provision of remedies does not give a right of access to a federal forum. Federal legislation was deemed necessary because telemarketers could avoid state legislation by engaging in interstate operations, not because Congress recognized a significant federal interest deserving of protection in federal courts. See 47 U.S.C.S 227, Congressional finding No. 7; S. Rep. No. 102-178, at 5, reprinted in, 1991 U.S.C.C.A.N. 1968, 1973; see also VanBergen, 59 F.3d at 1548.

Furthermore, Senator Hollings' statements indicate that an overriding concern in the creation of the private right of action was to make it easier for consumers to recover damages -- "preferably in small claims court." 137 Cong. Rec. S16205-06 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). The implication is that suits in courts other than state small claims courts would be more costly and burdensome to consumers. The entire focus of Senator Hollings' statement is on state courts. It does not appear that he, the bill's sponsor, contemplated private enforcement actions in federal courts. We agree with the Fourth Circuit that "the clear thrust of his statement was consistent with the bill's text that state courts were the intended fora for private TCPA actions." International Science, 106 F.3d at 1153.

Thus, looking to the statute as a whole, and attempting to give effect to every provision, we find that the explicit reference to state courts, and the absence of any reference

to federal courts, reflects Congress' intent to withhold jurisdiction over such consumer suits in federal court.

B.

Appellants argue that it is not necessary that the TCPA itself confer federal jurisdiction over private rights of action. Rather, appellants contend that, regardless of the TCPA, jurisdiction is proper pursuant to 28 U.S.C. S 1331, which gives district courts jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." The term "arising under" eludes precise definition. Justice Holmes articulated the most common definition: "[a] suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). More recently, this court has recognized two tests that generally apply to a court's assessment of federal question jurisdiction. See Virgin Islands Housing Auth. v. Coastal General Constr. Serv. Corp., 27 F.3d 911, 916 (3d Cir. 1994). "First, the question is whether federal law creates the cause of action. If not, the second inquiry is whether the complaint poses a substantial federal question." Id. (citing West 14th St. Commercial Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 192 (2d Cir. 1987)). See also Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983). Appellants argue that their complaint satisfies both these tests in that, first, the TCPA creates the cause of action, and second, since the claims asserted in the complaint require the construction of the TCPA, a substantial federal question is posed.

In connection with the first question, here federal law does create the cause of action. However, the fact that federal law creates the cause of action does not necessarily end the inquiry regarding the existence of federal subject matter jurisdiction. Although S 1331 functions as a general grant of jurisdiction to district courts of cases in which the cause of action was created by federal law, "it does not mean that jurisdiction is not precluded by another statute or doctrine of judicial administration." First Jersey Securities, Inc. v. Bergen, 605 F.2d 690, 694 (3d Cir. 1979) (finding that failure to exhaust administrative remedies precludes district court jurisdiction). Accordingly, "[t]o

10

establish a cause of action in district court under section 1331 [the plaintiffs] must show first that their action . . . `arises under' . . . [federal law] and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere." Connors v. Amax Coal Co., Inc., 858 F.2d 1226, 1229-30 (7th Cir. 1988) (concluding that, even if plaintiff's claims arose under ERISA or federal common law, S 1331 could not supersede provisions of Longshore and Harbor Workers' Compensation Act and Black Lung Benefits Act conferring exclusive jurisdiction in the courts of appeals). For example, federal statutes frequently assign jurisdiction to a court other than the federal district courts. See, e.g., 28 U.S.C. S 1491(a)(1) (assigning jurisdiction of certain takings claims to the Court of Federal Claims); 29 U.S.C. S 160(f) (assigning original jurisdiction to review agency orders under the National Labor Relations Act to federal courts of appeals). By virtue of such a specific reference or assignment, Congress negates district court jurisdiction under S 1331.4 Although the TCPA is certainly unique in that it refers litigants to the jurisdiction of a state court rather than another federal court, the principle is the same.

We recognize that, given S 1331's general grant of federal question jurisdiction, Congress could have more clearly expressed its intent in the TCPA to decline to provide jurisdiction for these consumer suits in district court. However, we have never before required Congress, when assigning jurisdiction to a court other than the district court, to state that the district court is without jurisdiction.

_____

4. We decline to apply the Tafflin Court's analysis of the divestment of state court jurisdiction to our S 1331 analysis. The federal courts' S 1331 jurisdiction is not equivalent to the general jurisdiction of state courts. Congress itself conferred federal question jurisdiction on district courts in S 1331. By contrast, state courts do not have jurisdiction over federal causes of action because of any act of Congress. Rather, "state courts have inherent authority . . . to adjudicate claims arising under the laws of the United States." Tafflin, 493 U.S. at 458. The mere fact that S 1331 creates federal question jurisdiction does not mean that it creates any presumption in favor of federal jurisdiction in particular cases. With respect to the withholding of federal jurisdiction, in contrast to the divestment of state jurisdiction, there is no requirement that a statement of Congressional intent be explicit or unmistakable.

11

See Public Util. Comm'r v. Bonneville Power Admin., 767 F.2d 622, 627 (9th Cir. 1985) (citations omitted) (noting that "jurisdiction over a specific class of claims which Congress has committed to the court of appeals generally is exclusive, even in the absence of an express statutory command of exclusiveness"). To find federal court jurisdiction here would not only be contrary to the clear intent of Congress, but also would represent a departure from well-established principles reflecting a reluctance to find federal jurisdiction unless it is clearly provided for. As federal courts are courts of only limited jurisdiction, there is a general presumption against federal jurisdiction which a plaintiff bears the burden of rebutting. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted). Furthermore, statutes purporting to confer federal jurisdiction are to be construed narrowly, with ambiguities resolved against a finding of federal jurisdiction. See Mars Inc v. Kabushiki-Kaisha Conlux, 24 F.3d 1368, 1373 (Fed. Cir. 1994); Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1067 (5th Cir. 1984) (citations omitted). We conclude that because the TCPA reflects Congress' intent to authorize consumer suits in state courts only, and because it is "a more specific statutory provision conferring exclusive jurisdiction elsewhere," appellants cannot rely on the general federal question jurisdiction of S 1331.

In addition, we note that appellants' argument that federal question jurisdiction is proper because the complaint poses a substantial federal question seems misplaced in these circumstances. Generally, courts refer to this test when the first test is not met, namely, when there is no federal cause of action. See, e.g., Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809-10 (1986); Franchise Tax Board, 463 U.S. at 13 (considering federal subject matter jurisdiction over a cause of action created by state law that implicates a question of federal law). Here, however, federal law is the source of appellants' cause of action, but refers litigants to state courts only. Thus, regardless of the presence of a substantial federal question, Congress' intent to preclude consumer suits under TCPA in federal court trumps the general grant of

12

federal question jurisdiction in S 1331. See Connors, 858 F.2d at 1229-30; First Jersey Securities, 605 F.2d at 694.

Appellants also contend that federal jurisdiction is authorized by 28 U.S.C. S 1337(a), which provides that "district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." The same tests for determining whether an action "arises under" federal law for purposes of S 1331 apply to determine whether an action "arises under" an Act of Congress regulating commerce. See Franchise Tax Board, 463 U.S. at 8 n. 7 (citations omitted). Accordingly, any action that could be brought in federal court under S 1337 could also be brought under S 1331. See 13 Charles Alan Wright et al., Federal Practice and Procedure S 3574, at 235. When first enacted, S 1337 nonetheless served an important function because, unlike S 1331, it did not include an amount in controversy requirement. See id. at 238. As this was the only function ever served by S 1337, Congress' elimination of S 1331's amount in controversy requirement rendered the grant of jurisdiction in S 1337 superfluous. See id.

In this case, appellants' argument that S 1337 authorizes federal jurisdiction fails for the same reason that their argument under S 1331 fails. Like S 1331, S 1337 is a general jurisdictional statute. As such, it can be supplanted by another statute that assigns jurisdiction elsewhere. See Simmons v. Arkansas Power & Light Co., 655 F.2d 131, 133 (8th Cir. 1981); Assure Competitive Transp., Inc. v. United States, 629 F.2d 467, 471 (7th Cir. 1980). Congress' intent to limit consumer suits under the TCPA to state courts supersedes the general grant of jurisdiction in S 1337.

Finally, appellants argue that since the statute does not clearly state whether a private cause of action may be brought in federal court, a Cort v. Ash, 422 U.S. 66 (1975), analysis should apply to determine whether a federal cause of action should be inferred from the statute.5 That

_____

5. The Court in Cort v. Ash identified several factors as relevant to a determination of whether a private cause of action is implicit in a statute
that does not expressly create one:

13

analysis, however, is directed at a different question from the one we address. The Cort v. Ash factors probe whether a private right of action can be implied from a statute that does not expressly create one. In this case, a private right of action is clearly created; the uncertainty relates only to the proper forum for that action. The Supreme Court has recognized that the question of whether a statute creates a private right of action is distinct from the question of whether a federal court has jurisdiction:

> [T]he threshold question clearly is whether the Amtrak Act or any other provision of law creates a cause of action whereby a private party such as the respondent can enforce duties and obligations imposed by the Act; for it is only if such a right of action exists that we need consider whether the respondent had standing to bring the action and whether the District Court had jurisdiction to entertain it.

National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers, 414 U.S. 453, 456 (1974); see also Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 588 F.2d 1216, 1220 (9th Cir. 1978).

To the extent that Cort v. Ash does inform our jurisdictional analysis, it teaches that our focal point must be Congress' intent. See Thompson v. Thompson, 484 U.S. 174, 179 (1988). The Cort v. Ash analysis illustrates that in attempting to discern Congress' intent, we must consider that which is implicit, as well as that which is explicit, in a statute. As the foregoing discussion demonstrates,

_____

> First, is the plaintiff `one of the class for whose especial benefit the
> statute was enacted' . . . ? Second, is there any indication of
> legislative intent, explicit or implicit, either to create such a remedy
> or to deny one? Third, is it consistent with the underlying purposes
> of the legislative scheme to imply such a remedy for the plaintiff?
> And finally, is the cause of action one traditionally relegated to state
> law, in an area basically the concern of the States, so that it would
> be inappropriate to infer a cause of action based solely on federal
> law?

Id. at 78 (citations omitted).

14

Congress intended to refer private litigants under the TCPA to state court, and to preclude federal question jurisdiction over such consumer suits.

III.

For the foregoing reasons, we will affirm the order of the district court dismissing this case for lack of subject matter jurisdiction.

15

ALITO, Circuit Judge, dissenting:

It is undisputed that the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. S 227, a federal statute, creates a private right of action on behalf of a person or entity victimized by telemarketing abuse. Such an action is plainly one "arising under the . . . laws . . . of the Unites States" within the meaning of 28 U.S.C. S 1331, the general federal question jurisdiction statute. The majority, however, holds that the district courts do not have jurisdiction to entertain private TCPA actions under section 1331 because 47 U.S.C S 227(b)(3) in effect divests the federal courts of jurisdiction. But section 227(b)(3) says nothing about the jurisdiction of the federal district courts; instead, it says merely that an action under that provision "may" be brought in an appropriate state court "if otherwise permitted by the laws or rules of court of" that state. More than this, it seems to me, is needed to divest a federal district court of its jurisdiction under section 1331. Indeed, I think that the Supreme Court's decision in Tafflin v. Levitt, 493 U.S. 455 (1990), clearly shows that the majority has erred. I therefore respectfully dissent.

In Tafflin, the Supreme Court interpreted the following provision from the federal RICO statute:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court.

18 U.S.C. S 1964 (emphasis added). The Court found that this language was insufficient to divest state courts of concurrent jurisdiction over private RICO actions, explaining:

> [The statute's] grant of federal jurisdiction is plainly permissive, not mandatory, for the statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described "may" be brought in the federal district courts, not that they must be.

Tafflin, 493 U.S. at 796 (internal quotations omitted). Applying this reasoning to the instant case, it is clear that

the language of the TCPA is insufficient to divest district courts of their federal question jurisdiction, as the statute merely provides that private suits "may" be brought in state court. See 47 U.S.C. S 227(b)(3).

The majority, however, declines to apply the reasoning of Tafflin on the ground that Tafflin concerned divestment of state court jurisdiction whereas this case concerns divestment of federal court jurisdiction. According to the majority, because "[s]tate courts are courts of general jurisdiction, while federal courts are courts of only limited jurisdiction[,] . . . [t]he permissive authorization of jurisdiction in state courts does not imply that jurisdiction is also authorized in federal courts."1  Maj. Op. at 7. This observation, while entirely accurate, is irrelevant to the issue before us. The appellants are not arguing that the TCPA authorizes federal jurisdiction by implication. Rather, the appellants simply maintain that the TCPA does not divest district courts of the federal question jurisdiction they already possess under 28 U.S.C. S 1331. 2 Although the majority eventually confronts this issue in Part IIB of its opinion, it fails to explain in that section why it does not apply the Tafflin Court's divestment analysis.3

By sidestepping Tafflin, the majority is able to conclude that Congress's reference to state courts in the TCPA "must

_____

1. See also International Science & Tech. Inst., Inc. v. Inacom Communications, Inc., 106 F.3d 1146, 1151-52 (4th Cir. 1997) ("If a statute authorizes suit in state courts of general jurisdiction through the
use of the term `may,' that authorization cannot confer jurisdiction on a federal court because federal courts are competent to hear only those cases specifically authorized.").

2. In light of the fact that district courts have possessed general federal
question jurisdiction since 1875, see Schweiker v. Chilicky, 487 U.S. 412, 420 (1988), I am somewhat puzzled by the majority's reliance on "well-established principles reflecting a reluctance to find federal jurisdiction unless it is clearly provided for." Maj. Op. at 12.

3. The majority's reliance on the divestment analysis in Public Util. Comm'r v. Bonneville Power Admin., 767 F.2d 622, 627 (9th Cir. 1985), is misplaced. The statute at issue in Bonneville, unlike the TCPA, contained mandatory language assigning jurisdiction to another court. See id. at 626 (quoting 16 U.S.C. S 839f(e)(5) ("Suits . . . shall be filed in
the United States court of appeals for the region.")) (emphasis added).

17

reflect something other than a mere confirmation of concurrent jurisdiction." Maj. Op. at 7. The Fourth and Fifth Circuits have likewise found it "meaningful that Congress explicitly mentioned only state courts" since "mentioning state courts is unnecessary to vest them with concurrent jurisdiction." International Science, 106 F.3d at 1152. See Chair King, Inc. v. Houston Cellular Corp., 131 F.3d 507, 512 (5th Cir. 1997). The problem with this view is that it is inconsistent with the Supreme Court's decision in Tafflin. Just as it was unnecessary for Congress to mention state courts in the TCPA in order to vest them with concurrent jurisdiction, it was unnecessary for Congress to mention federal district courts in the RICO statute in order to vest them with concurrent jurisdiction. See 28 U.S.C. S 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."). Nevertheless, the Tafflin Court concluded that the RICO statute's explicit mention of district courts was not "meaningful" enough to vest them with exclusive jurisdiction. I would similarly conclude that the TCPA's explicit mention of state courts is not meaningful enough to vest them with exclusive jurisdiction.

The Supreme Court has long abided by the "general rule that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive." United States v. Bank of New York & Trust Co., 296 U.S. 463, 479 (1936). Consistent with this principle, the Tafflin Court concluded that the RICO statute's permissive grant of jurisdiction to federal district courts did not constitute an "explicit statutory directive" sufficient to divest state courts of their inherent federal question jurisdiction. 493 U.S. at 460-61. Likewise, I would hold that the TCPA's permissive grant of jurisdiction to state courts does not constitute an"explicit statutory directive" sufficient to divest district courts of their section 1331 federal question jurisdiction.

Notwithstanding the lack of a clear textual divestment in the TCPA, the Supreme Court has instructed that jurisdiction can also be divested "by unmistakable implication from legislative history." Tafflin, 493 U.S. at 460. In this regard, the majority finds that Senator Hollings's statement reveals Congress' clear intention to

18

grant exclusive jurisdiction to the state courts. I disagree. I do not believe that one speech given by one senator is sufficient to demonstrate the "unmistakable" intent of Congress. Moreover, even if Senator Hollings's statement were given controlling weight, it merely indicates that the TCPA was designed to "allow consumers to bring an action in State court." 137 Cong. Rec. S16205 (daily ed. Nov. 7, 1991) (emphasis added). The Senator explained that giving consumers the option of going to small claims court would enable them to seek modest damages without incurring the high costs of formal litigation. Id. However, the Senator said nothing about preventing corporate adversaries who are battling over large sums of money from choosing to go to federal court. Therefore, I would not conclude that Senator Hollings's statement does anything more than confirm the permissive grant of state jurisdiction found in the statute's text.

I am also unconvinced by the majority's contention that the overall statutory scheme of the TCPA supports its finding of exclusive state court jurisdiction. The majority first notes that another section of the TCPA specifically "mandates exclusive federal court jurisdiction over TCPA actions brought by states on behalf of their residents." Maj. Op. at 8 (citing 47 U.S.C. S 227(f)(2)). I agree that this explicit grant of exclusive jurisdiction is significant, but I believe that it cuts against the majority's conclusion. Section 227(f)(2) reveals that, while drafting the TCPA, Congress knew full well how to grant exclusive jurisdiction with mandatory language. The most natural interpretation of Congress' failure to use similar language in section 227(b)(3) is that Congress did not intend to grant exclusive jurisdiction in that section.

The majority also relies on sections 227(f)(4) and 227(f)(7) of the TCPA, which specifically address venue, service of process, and possible conflicts between federal and state enforcement efforts. The majority finds significance in the fact that these issues are not discussed in connection with the private right of action granted by section 227(b)(3). However, since the general rules governing venue and service of process in the district courts are well established, see 28 U.S.C. S 1391(b); Fed. Rules Civ. Proc. 4, 4.1, there

19

was no need for Congress to reiterate them in section 227(b)(3). The fact that venue and service of process are discussed in section 227(f)(4) and not section 227(b)(3) simply indicates that Congress wished to make adjustments to the general rules in the former section and not the latter. As for the conflict provision that appears in section 227(f) but not section 227(b)(3), it is hardly surprising that Congress would be concerned about agency conflicts in the section of the TCPA dealing with official state enforcement efforts but not in the section governing private lawsuits.

Finally, the majority points to other provisions in the Communications Act in which Congress expressly provided for concurrent jurisdiction. According to the majority, these provisions render Congress' "failure to provide for concurrent jurisdiction under S 227(b)(3) . . . significant." Maj. Op. at 8-9. However, because these provisions of the Communications Act were not passed contemporaneously with the TCPA, they shed little light on the intent of Congress at the time of the TCPA's passage.

In the end, the majority fails to give any convincing reason for finding that the permissive grant of jurisdiction to state courts in the TCPA divests district courts of the jurisdiction they possess under 28 U.S.C. S 1331. Moreover, by rejecting the applicability of the Supreme Court's reasoning in Tafflin, the majority reaches the odd conclusion that divestments of federal court jurisdiction over federal claims should be more easily found than divestments of state court jurisdiction over federal claims. In light of the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. S 1331, I would instead conclude that a divestment of district court jurisdiction should be as reluctantly found as a divestment of state court jurisdiction. Accordingly, I dissent.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

20