DLD-154                                                        NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1052
_____

HERBERT SPERLING,
                                        Appellant

v.

WARDEN DAVID EBBERT
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 10-cv-00191)
District Judge:  Honorable Richard P. Conaboy
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
March 31, 2011

Before:  BARRY, FISHER and ROTH, Circuit Judges

(Opinion filed:  July 20, 2011)
_____

OPINION
_____

PER CURIAM.

        In 1973, the United States District Court for the Southern District of New York

imposed a sentence of life imprisonment upon Herbert Sperling following his conviction

for, inter alia, organizing a continuing criminal narcotics enterprise.  See United States v.

Sperling, 506 F.2d 1323, 1344 (2d Cir. 1974) ("The record shows that Sperling was the operational kingpin of a highly organized, structured and on-going narcotics network."). Sperling, now age seventy-two, is currently serving the sentence at FCI-Allenwood in Pennsylvania. In January 2010, he filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania, claiming that the Bureau of Prisons ("BOP") has improperly deemed him ineligible for the Elderly Offender Home Detention Pilot Program ("EOHDPP") because he is serving a sentence of life imprisonment. The District Court denied the habeas petition, concluding that Sperling is prohibited by statute, 42 U.S.C. § 17541(g), from eligibility for the EOHDPP, and that the BOP has reasonably construed the governing statute to exclude life-sentenced inmates. Sperling timely filed this appeal.

We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal conclusions. Woodall v. Fed. Bur. of Prisons, 432 F.3d 235, 239 n.3 (3d Cir. 2005).

The Second Chance Act of 2007 established the EOHDPP by directing the Attorney General to conduct a two-year pilot program "to determine the effectiveness of removing *eligible elderly offenders* from a [BOP] facility and placing such offenders on home detention until expiration of the prison term to which the offender was sentenced." 42 U.S.C. § 17541(g)(1)(A) (emphasis added). The sole question here is whether Sperling is an "eligible elderly offender" despite serving a term of life imprisonment.

The statute defines "eligible elderly offender" to require that an inmate meet

2

several criteria in order to participate in the pilot program, including the following:

> The term "eligible elderly offender" means an offender in the custody of the Bureau of Prisons--
> (i) who is not less than 65 years of age; [and]
> (ii) who is serving a term of imprisonment *that is not life imprisonment* based on conviction for an offense or offenses that do not include any crime of violence …, sex offense …, offense described in section 2332b(g)(5)(B) of title 18, United States Code, or offense under chapter 37 of title 18, United States Code …, and has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced[.]

42 U.S.C. § 17541(g)(5)(A)(ii) (emphasis added).

On February 5, 2009, the BOP issued Operations Memorandum No. 003-2009 (5392) to provide guidance to its staff in administering the EOHDPP. The Memorandum explains that inmates must meet all statutory eligibility criteria to participate in the EOHDPP. With regard to life sentences, the Memorandum explains that "[i]nmates serving life sentences are not eligible to participate in the pilot program because it is not possible to calculate 75% of a life sentence."

Sperling argues that the BOP has erred in determining eligibility for the EOHDPP because, as he reads § 17541(g)(5)(A)(ii), Congress did not exclude life-sentenced inmates per se, but rather identified only certain crimes for which a life sentence bars eligibility, such as a "crime of violence" or "sex offense." Sperling thus argues that his life sentence does not render him ineligible under § 17541(g)(5)(A)(ii). Sperling's argument, however, turns on an insupportable construction of the statutory language.

Section 17541(g)(5)(A)(ii) provides in relevant part that an eligible offender is one

3

"serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence, [sex offense, and other specified offense.]"  The phrase "that is not life imprisonment" clearly modifies "term of imprisonment" so as to provide that only those offenders serving a term of imprisonment that is not for life (and those serving a term of imprisonment for offenses that do not include any crime of violence or other listed offenses) are eligible for the EOHDPP.  The statute is not phrased, as Sperling would have it, to grant eligibility to inmates serving life terms so long as the life term was not imposed upon conviction for any crime of violence or other offense listed in the statute.  That is not a natural or even plausible reading of the statutory language.

"If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984); see Madison v. Resources for Human Dev., Inc., 233 F.3d 175, 185 (3d Cir. 2000) ("It is well-settled that if a statute unambiguously expresses Congress's intent, courts must give effect to that intent.").  The District Court properly concluded that Sperling is entitled to no relief in light of the expressed intent in § 17541(g)(5)(A)(ii) to exclude life-sentenced inmates from the definition of "eligible elderly offender."

Alternatively, even assuming, arguendo, that the language of § 17541(g)(5)(A)(ii) alone does not conclusively resolve this matter, we find the BOP's interpretation of the statute reasonable and persuasive.  As the BOP observes in its Operations Memorandum,

4

it is not possible to render an eligibility determination for a life-sentenced inmate while doing service to the express statutory requirement that an offender "has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced." § 17541(g)(5)(A)(ii). This criterion of at least 75 percent service before eligibility would be rendered meaningless, or at best unworkable, if it were applied to inmates serving terms that run for the duration of their natural lives. The BOP has thus properly interpreted § 17541(g)(5)(A)(ii) to exclude life-sentenced inmates "so that effect is given to all [the statute's] provisions, so that no part will be inoperative or superfluous, void, or insignificant." Erienet, Inc. v. Velocity Net, 156 F.3d 513, 516 (3d Cir. 1998) (quotation marks omitted). Finally, while "informal agency interpretations of statutes, such as the BOP Operations Memorandum here, are not subject to deference," Izzo v. Wiley, 620 F.3d 1257, 1259 (10th Cir. 2010), Sperling offers no viable argument that the BOP's interpretation of § 17541(g)(5)(A)(ii) is anything but the correct one.

In sum, the District Court properly denied Sperling's habeas corpus petition because the BOP acted consistently with the controlling statutory authority in deeming him ineligible for the EOHDPP. Because this appeal from the denial of Sperling's habeas petition presents "no substantial question," 3d Cir. LAR 27.4 and I.O.P. 10.6, we will affirm the District Court's judgment.