# Weitzner v. Vaccess America Inc.

Daniel A. Osborn, for plaintiff.
Carl Greco, for defendant.

MINORA, J., June 27, 2008—

## I. BACKGROUND

On February 14, 2005, plaintiff commenced this putative class action individually and on behalf of himself and others similarly situated alleging violations of the Telephone Consumer Protection Act 47 U.S.C. §227(b)(3), 47 U.S.C. §227(b)(1)(C) and regulations 47 C.F.R. §1200(a)3 promulgated thereunder (TCPA). Before this court are plaintiff's motion to amend his complaint regarding the definition of the class and collective defendants' motion for summary judgment.

The issues presented by these motions are three: (1) whether governing law prevents TCPA nationwide class actions from being maintained in Pennsylvania courts, (2) whether this plaintiff is a proper representative plaintiff for putative class action purposes, and (3) what is the proper statute of limitations.

For the reasons set forth below, this court concludes first, that the substantive case law governing the Commonwealth of Pennsylvania applies and prohibits the finding of a nationwide class in state courts; second, that this plaintiff is not an appropriate plaintiff to represent, "all others similarly situated"; and third, that the Pennsylvania statute of limitations should govern.

## II. FACTS

The following facts are derived from the original complaint filed on February 14, 2005 and these same facts are largely replicated in the proposed amended complaint. These facts are taken as true for purposes of the defendants' motion for summary judgment.

Plaintiff Ari Weitzner M.D., an individual physician, brings this putative class action lawsuit against all defendants alleging that these defendants' company or companies transmitted voluminous unsolicited advertisements via facsimile transmission to plaintiff and "all others similarly situated" allegedly in violation of the TCPA found at 47 U.S.C. §227(b)(3).

On or about January 2, 2001 and until the date of the resolution of this lawsuit is the proffered definition of the "class period". Plaintiff brings this putative class action on behalf of himself "and all others similarly situated" who received unsolicited facsimile advertisements from the defendants (the class).

Venue is alleged to be proper in Lackawanna County because defendant Vaccess is alleged to "maintain its principle [sic] office in this county." (See paragraph 4 of

plaintiff's complaint.) Venue is further alleged to be proper because the allegedly improper acts, transactions and conduct occurred in this county.

It is further alleged that plaintiff, Ari Weitzner M.D., is a physician who maintains his office in Brooklyn, New York and that he maintains and operates a facsimile machine at his office there. (See paragraph 6 of plaintiff's complaint.)

Defendant, Vaccess America Inc., is alleged to be a Pennsylvania corporation maintaining "its principle [sic] place of business" in Lackawanna County. (See paragraph 7 of plaintiff's complaint.)

Defendant Aventis Pasteur Inc. is also alleged to be a Pennsylvania corporation.

The factual allegations commence with conflicting temporal contexts. At paragraph 2 of plaintiff's complaint, the class period is alleged to commence on January 2, 2001 and yet at paragraph 9 of the same document it is alleged that the first unsolicited facsimile transmission began on April 21, 2001 and that the transmissions were "willfully or knowingly transmitted."

It is alleged that defendants sent hundreds, if not thousands, of unsolicited transmissions during the class period including those to this plaintiff. All of these are alleged to be unsolicited.

The complaint concludes seeking treble damages for the knowing violations, seeking injunctive relief and finally, seeking costs, disbursements and attorneys' fees.

## III. PROCEDURAL HISTORY

The relevant procedural history is as follows. On October 29, 2007, defendants filed both a motion for summary judgment and brief in support, as well as a praecipe for assignment. On October 30, 2007, plaintiff filed a motion for leave to amend the complaint as well as a proposed first amended class action complaint. The associated attorney's certification of good faith and proofs or affidavits of good faith and service of process were also filed.

In response to plaintiff's motion for leave to amend the complaint, defendants filed a response to the motion for leave to amend on November 21, 2007. On November 26, 2007, plaintiff filed a memorandum of law in opposition to defendant's motion for summary judgment. Argument on both contested motions was held on September 27, 2007 and the subsequent briefing schedule was established at the time. While argument has occurred with regard to plaintiffs' adherence to this subsequent timetable, the court has exercised its discretion to address both matters substantively and on their merits. A transcript of September 27, 2007 argument was filed on February 8, 2008. A transcript of further argument on February 28, 2008 was filed on March 19, 2008. Therefore, the two matters are ripe for decision.

## IV. DISCUSSION

### A. *The TCPA Statutory Scheme Jurisdiction*

The statutory scheme behind the TCPA, although not unique, is somewhat unusual. The United States Congress

passed 47 U.S.C. §227(b)(1)(C) making it unlawful "for any person within the United States, or any person outside the United States if the recipient is within the United States . . . (C) to use any telephone facsimile machine, computer, or other device, to send to a telephone facsimile machine, an unsolicited advertisement" unless certain conditions are met.

Additionally, the same statutory scheme under section 227(b)(3) authorized a private cause of action while vesting federal question jurisdiction for this federally authorized private right to a cause of action exclusively in state courts. Diversity jurisdiction and other causes of action remained with the federal courts, but the federal question jurisdiction for this private cause of action was exclusively vested in states' courts, if permitted by the laws or rules of court of that state. The statute authorizing this can be found at 47 U.S.C. §227(b)(3) and it reads as follows:

"(3) Private right of action.

"A person or entity *may, if otherwise permitted by the laws or rules of court of a state,* bring in an appropriate court of that state

"(A) an action based on a violation of this subsection . . . to enjoin such a violation,

"(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

"(C) both such actions.

"If the court finds that the defendant willfully or knowingly violated this subsection or the regulations

prescribed under this subsection, the court *may,* in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph." (emphasis added)

In the 2007 case of *Holster III v. Gatco Inc.,* 485 F. Supp.2d 179, 181 (E.D.N.Y. 2007), the district court found that the Second Circuit Court of Appeals had held that federal courts lack federal question jurisdiction over claims brought under the TCPA. In *Holster, supra,* the district court quoted the Second Circuit in *Foxhall Realty Law Offices Inc. v. Telecommns. Premium Servs.,* 156 F.3d 432, 436 (2d Cir. 1998) and *Gottlieb v. Carnival Corp.,* 436 F.3d 335, 340-41 (2d Cir. 2006) in support of the proposition that federal question jurisdiction is lacking in the federal courts for claims brought under the TCPA.

The *Gottlieb* case also went a step further and characterized the TCPA as the "functional equivalent to state law." 436 F.3d at 342. This seemingly radical statement is supported by the plain language of the statute (*supra,* see emphasis.)

The TCPA statute provides that, "[a] person or entity *may, if otherwise permitted by the laws or rules of court of a state,* bring [an action] in an appropriate court of that state." 47 U.S.C. §227(b)(3). (emphasis added)

The language clearly provides that the TCPA merely enables states to permit such a cause of action and concomitantly contemplates that the laws and rules of court

of some states may allow such a suit and other states may prohibit such action.

The *Gottlieb* Second Circuit court went on to state that, "Congress . . . sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps." 436 F.3d at 342.

The *Holster III* case went on to conclude that, "Therefore, although the substantive law giving rise to the private cause of action is a federally enacted statute, Congress has rested jurisdiction with the states." 485 F. Supp.2d at 184.

A similar result was reached in the 2006 case of *Bonime v. Avaya Inc.,* 2006 WL 3751219 (E.D.N.Y. 2006) wherein at page 4, the court concluded, "the TCPA must be treated as a state statute." The statute was thus determined to confer both "federal diversity and state court jurisdiction over private claims." *Bonime, id.* and *Gottlieb,* 436 F.3d at 339.

The court in *Bonime* at page 5 gave the rationale for this unusual statutory scheme,

"Finally, the TCPA was enacted because state laws that attempted to regulate telemarketing were ineffective because of telemarketers' ability to avoid the restrictions of state law, simply by locating their phone centers out of state . . . Congress thus sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps."

There have also been a number of constitutional challenges to this unusual statutory scheme. Those challenges have arisen in the context of equal protection arguments because the statutory language "if otherwise permitted by the law or rules of court of a state" necessarily means some states will allow a private cause of action and some states will not. Thus necessarily suits are alleging the denial of equal protection to those citizens residing in the prohibiting states.

As a matter of precision, these challenges must necessarily arise under the equal protection component of the Fifth Amendment's Due Process Clause and not the Fourteenth Amendment which applies only to the states. Both use the same standard for guaranteeing equal protection. *Adarand Constructors Inc. v. Pena,* 515 U.S. 200, 115 S.Ct. 2097, 2106-2108, 132 L.Ed.2d 158 (1995).

Essentially because of the nature of this statutory scheme under the TCPA only the existence of a private right of action based upon federal question jurisdiction would vary from state to state. Diversity jurisdiction would still remain as would rights enforceable by a state's attorney general or the Federal Communications Commission irrespective of the above referenced private cause of action availability.

Moreover, in the Fourth Circuit case of *International Science v. Inacom,* 106 F.3d 1146, 1156 (4th Cir. 1997), the court effectively ended this dispute with two conclusions. First, the court recognized that any inequality under TCPA arose from a legislative classification "that

is not based on a fundamental right or impermissible characteristic such as race, religion or national origin ...."

Second, the Fourth Circuit went on to explain that:

"our review of the statutory provision under the Equal Protection Clause is narrow:

"The question is simply whether the legislative classification is rationally related to a legitimate governmental interest. Using this standard the Act is entitled to a strong presumption of validity and must be sustained if there is any reasonably conceivable set of facts that could provide a rational basis for the classification." *International Science, supra,* 106 F.3d at 1156-57.

The same court concluded this area of discussion by stating, "we believe Congress acted rationally in both closing federal courts and allowing states to close theirs to the millions of private actions that could be filed if only a small portion of each year's 6.57 billion telemarketing transmissions were illegal under the TCPA." *Id.* 106 F.3d at 1157.

Other challenges to this unusual statutory scheme sound in terms of federalism and the violation of the Tenth Amendment's Reservation Clause which reserves to the states those powers not conferred on Congress by the constitution.

The argument as framed in several cases is essentially that by enacting the TCPA Congress has illegally and impermissibly commandeered the state courts and interfered with the states' Tenth Amendment rights to

govern without interference from the federal government. *Id.* Also see, *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

These cases essentially conclude that Congress has avoided this potential mistake by wording the TCPA in such a manner that allows individual states to reject enforcement of this federally created right in their state courts if the state chooses to so reject.

Because Congress has not commanded the states to act, but at most allowed states to either opt in or opt out of enforcing the federal law (TCPA) which would be allowable under Article VI Supremacy Clause, Congress has effectively avoided these constitutional issues. See *International Science v. Inacom, supra; New York, supra; Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed.2d 967 (1947).

The insertion of the precatory language in the TCPA statute, "if otherwise permitted by the laws or rules of court of a state" 47 U.S.C. §227(b)(3), allows the states the authority to make the ultimate decision as to whether the private TCPA cause of action will be recognized or rejected in said states' appropriate courts.

Accordingly, Congress is not invading state sovereignty, but rather is acknowledging and recognizing that state sovereignty by explicitly providing for and recognizing the state's authority and power to reject participation in the private cause of action contemplated by the TCPA statutory scheme.

As was stated in *International Science, supra,* 106 F.3d 1146, 1158 quoting *New York, supra,* 505 U.S. at 168, 112 S.Ct. at 2424,

"Where Congress [thus] encourages state regulation rather than compelling it, state governments remain responsive to the local electorate's preferences; state officials remain accountable to the people. . . . In creating a conditional right of action to enforce the TCPA in state courts, Congress neither exceeded its delegated powers nor invaded the province of state sovereignty, which may still be exercised to prohibit the action."

The key feature of the TCPA which extricates this statutory scheme from constitutional prohibition is that it explicitly recognizes state sovereign power and authority to reject Congress' conditional authorization of the private right to a cause of action.

Having now dealt with the constitutional attacks on the TCPA statutory scheme, we shall now proceed to the specific issues framed by the parties' pleadings and outlined earlier in this opinion.

B. *Whether Governing Law Prevents TCPA Nationwide Class Action From Being Maintained in Pennsylvania Courts?*

Answered in the affirmative.

As was noted earlier, the TCPA at 47 U.S.C. §227(b)(3) authorizes a conditional right to a private cause of action enforcing its terms. It is deemed to be conditional because the statute as above entitled (3) Private right of action includes the terms, "a person *may, if otherwise permitted by the laws or rules of court of a state,* bring in an appropriate court of that state" . . . and action. (emphasis added)

Pennsylvania's Rules of Civil Procedure at Pa.R.C.P. 1701 to 1716 clearly authorize class action litigation in our Commonwealth. Normally, the issue of class certification would arise in the context of a motion for class certification. In our case, we have defendants' summary judgment challenging plaintiff as a suitable representative plaintiff. We also have plaintiff's motion to amend the complaint to redefine the class nationally (plaintiff is "on behalf of himself and *all others* similarly situated) (emphasis added) and we also have the conditional language of the statute all of which force us to look at whether or not a nationwide class is legally viable in Pennsylvania under the TCPA statutory conditional right scheme.

As was referred to earlier in the *Gottlieb* case at p. 101, the court there has characterized the TCPA as "the functional equivalent of state law." 436 F.3d at 342. The *Gottlieb* court went on to state that, "Congress . . . sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps." 436 F.3d at 342.

Finally, *Holster III, supra* at p. 102, concluded that, "Therefore although the substantive law giving rise to the private cause of action is a federally enacted statute, Congress has rested jurisdiction with the states." 485 F. Supp.2d at 184.

Now that federal question jurisdiction for the TCPA is now firmly established within those states allowing such a private right to a cause of action, plaintiff would

have us certify a nationwide class in his proposed amended complaint. This is so because he files it "on behalf of himself and *all others* similarly situated." (emphasis added) To certify such a class would be diametrically in contradiction to the clearly expressed statutory scheme. As has been noted *supra* 47 U.S.C. §227(b)(3) addresses the private right of action and expressly states such a suit may be allowed, "if otherwise permitted by the laws or rules of court of a state. . . ."

We know our plaintiff is from Brooklyn, New York. We also know from our review of both *Bonime v. Avaya Inc.,* 2006 WL 3751219, and *Holster III v. Gatco Inc.,* 485 F. Supp.2d 179 (E.D. N.Y. 2007), both New York cases, that New York State has a statutory bar on TCPA type class actions. See N.Y. C.P.L.R. §901(b). This section has been interpreted under *Holster III, supra* at 185 as prohibiting lawsuits seeking a penalty from being brought as a class action absent specific legislative authorization. The *Holster* court, *id,* concludes that, "New York State courts have held that class actions seeking penalties under the TCPA may not be maintained in New York State court."

In essence then, the plaintiff asks a Commonwealth of Pennsylvania trial court to do extraterritorially within New York State what a New York State court has declared itself unable to do. This we decline to do. In granting the plaintiff's requested amendment to certify a nationwide class, we would be in distinct and clear violation of the TCPA as well as violating principles of comity with our sister states and implicating

constitutional due process concerns where citizens of New York could be held culpable via a class action suit barred in their own state. Where is the notice and/or opportunity to be heard in that proffered scheme of the plaintiff?

The legislative enactments of each state reflect the judgment of that state's lawmakers about their view of the best way to organize their state government and ultimately their society. It is axiomatic that the legislative branch sets public policy and enacts laws. This is as it should be as the legislature is best suited to consider complex issues of public policy and the far reaching implications of those policies being newly proposed or changed. Using the forums of legislative committee hearings, they can assemble the facts and expertise needed to analyze proposed charges and their future implications before they are implemented. They can defer the law's adoption until impacted constituencies are consulted. They can defer the effective date of commencement of the law to insure proper notice to all and due ex post facto implications, their legislative acts must be prospective in nature. All of these features a court is ill equipped to do.

The courts by their very nature are narrower in scope. They interpret laws in the factual context of an individual case. Their ability to gather facts is linked to the facts at issue and the arguments of advocates espousing their client's individual private interests. This is hardly suited to analyzing public policy and finally, their case resolution is retroactive looking through the facts in the rearview mirror and deciding who should be held re-

sponsible for what already happened. It is the opposite of a prospective legislative enactment. The public must accept the judicial fait accompli without input and with a judge who in Pennsylvania only runs for a "yes" or "no" retention every 10 years. While that may be good for judicial tasks, it is arguably ill suited for activist judicially created legislative enacting as outlined above.

Fundamentally speaking, judges are not legislators and legislators are not judges. Courts, as noted, are not structured to resolve broad and complex inquiries into public policy by their very nature. Instead, courts are geared towards a civil resolution of conflict that may incrementally, slowly and gradually make incremental changes to existing legal principles over extended periods of time. Finally, of course, the executive branch implements the laws.

This civics review was necessary to understand the broader context as to why this court refuses to certify a nationwide class. Plaintiff was essentially asking this court to become a super legislature overturning the state of the law in New York State and other prohibiting states as established by their legislatures. If we were doing this in Pennsylvania, it would be contrary to our three branch structure of government as outlined above. By doing it in New York, we are contrary to the three branch structure and engaging in interstate lawmaking by this court's attempt to create a subset of a nationwide class in New York State and elsewhere where the legislature in its wisdom prohibits it. This we cannot and should not do.

State sovereign governmental organizations who have enacted laws and considered policy questions ought not be lightly overturned by their own courts let alone an out-of-state court like ours.

The Supreme Court of the United States has repeatedly rejected states' attempts to, "control conduct beyond the boundaries of that state" and regulate, "commercial activity occurring wholly outside" their borders. *Healy v. Beer Inst.,* 491 U.S. 324, 336-37 (1989).

This is more than matter of respect and comity for a sister sovereign's judgments and laws. The Full Faith and Credit and Due Process Clauses of the United States Constitution forbid a state from applying its law absent "significant contact or significant aggregation of contacts, creating state interest with the parties and the occurrences of the transaction." *Allstate v. Hague,* 449 U.S. 302, 308 (1981) (plurality opinion); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985).

In our case the legislature of the State of New York has made a private right of action under TCPA improper thereby determining an insufficient state interest with the parties and transactions of this nature.

The mere fact that foreign commerce "has effects within" a state does not authorize regulation of that commerce. *Edgar v. MITE Corp.,* 457 U.S. 624, 642-43 (1982) (plurality opinion). A state therefrom cannot "infring[e] on the policy choices of other states" and "must respect the interests of other states" regulating local transactions. *BMW of N. Amer. v. Gore,* 517 U.S. 559, 571-72 (1996).

If a company's interstate practices have adverse effects on the American public, Congress can end them in every state but only Congress possesses such sweeping power. Each state can only regulate within its borders, no matter how wise a uniform policy might be. *BMW of N. Amer.,* *supra* 517 U.S. at 571 (1996). Accordingly, we remain guided by the Pennsylvania Supreme Court case of *Klemow v. Time Incorporated,* 466 Pa. 189, 352 A.2d 12 (1976), *certiorari denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976) wherein the court at footnote 15 stated that, "[b]ecause the jurisdiction of the courts of the Commonwealth is territorially limited, the class may consist of only Pennsylvania residents. The class may also include non-residents who submit themselves to the jurisdiction of the state courts."

Therefore, our class, if all other mandated prerequisites are met, shall be unsolicited Pennsylvania facsimile recipients whose identities are readily discernible by sorting through the data in search of a limited number of area codes. This decision is made in the context of the plaintiff's motion to amend his complaint which attempts to certify a nationwide class and in the context of defendants' motion for summary judgment. The decision is explicitly not made in the context of a Pa.R.C.P. 1707 motion for certification of class action wherein the court recognizes that a hearing on certification would be mandatory under the rules wherein it states, "the court if so notified *shall* promptly set a date for a certification hearing." (emphasis added) Numerous facts agreed upon by the parties and dealt with in the next issue dealing with plaintiff's suitability to act as a representative plaintiff

would also mitigate against the need for a hearing since critical factual issues are uncontested and agreed upon.

The mere fact that foreign commerce "has effects within" a state does not authorize regulation of that commerce. *Edgar v. MITE Corp.,* 457 U.S. 624, 642-43 (1982) (plurality opinion). A state therefore cannot, "infring[e] on the policy choices of other states" and "must respect the interests of other states" in regulating local transactions. *BMW of N. Amer. v. Gore,* 517 U.S. 559, 571-72.

We do not believe that the federal nature of the TCPA nor the nature of a facsimile transaction using interstate wires justifies a different conclusion. The nature of the deference that must be shown to our sister states in the exercise of our state jurisdiction or the functional equivalent of state jurisdiction justifies such a result.

Accordingly, we decline to certify a nationwide class. We have not surveyed all 50 states, but believe for reasons of extraterritoriality and interstate lawmaking, we will certify only a class for plaintiffs within the Commonwealth of Pennsylvania. Strict construction of the TCPA statute's limiting language only in allowing states and not compelling states to have the cause of action as well as principles of full faith and credit; due process, comity and lack of desire to engage in extraterritorial and/or interstate lawmaking demand such a result limiting our plaintiffs to this Commonwealth.

Therefore, a class of Pennsylvania plaintiffs only and not a nationwide class will be allowed to proceed if all other prerequisites to the finding of a class are met.

## C. *Whether This Plaintiff Is a Proper Representative Plaintiff for Putative Class Action Purposes To Represent "All Others Similarly Situated?"*

Answered in the negative.

In order to perform a proper analysis of plaintiff as a proper representative plaintiff for class action purposes as opposed to a proper individual plaintiff, we must do a "standing" analysis. We must determine whether the plaintiff has proper standing first as an individual plaintiff and next as a class action representative plaintiff.

This is not merely an academic exercise, this goes to the very heart of whether a case or controversy exists, without which this court would be devoid of jurisdiction.

Pa.R.C.P. 1702 entitled, "Prerequisites to a class action" lays out the initial threshold for attempting to file a class action lawsuit. It refers to the following five elements conjunctively as a necessary prerequisite to a lawsuit being allowed to proceed with representative parties on behalf of a class.

Pa.R.C.P. 1702:

"(1) the class is so numerous that joinder of all parties is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criterion set forth in Rule 1708."

Thus, Rules 1701 and 1702 make it clear that representative parties are defined to mean the named parties to the action who represent the class. The court must find that the representative parties will fairly and adequately protect the interests of the class. In our case, that representative plaintiff is alleged to be Ari Weitzner M.D., an individual who ostensibly is acting, "on behalf of himself and all others similarly situated."

Defendants have alleged and plaintiff does not contest a number of allegations relative to the individual plaintiff noted above, Ari Weitzner M.D.

(1) Walter Weitzner M.D., the father of the named plaintiff is the actual owner of the telephone line connected to the fax machine.

(2) When individual plaintiff herein took over his father's practice the telephone number ownership was never transferred.

(3) The bill for the telephone line at issue is paid for by the individual plaintiff's professional corporation and not by the individual plaintiff himself.

(4) Individual plaintiff is the sole shareholder or owner of the professional corporation.

Plaintiff argues that the individual is a proper party because it was he who in fact was the "recipient" of the unsolicited facsimile transmissions. While the allegation that the plaintiff individually was the recipient may be

true, that may qualify him as an individual plaintiff but it does not necessarily make him a proper representative plaintiff.

Defendants counter and argue that Ari Weitzner M.D. does not own the right to use the telephone line connected to the facsimile machine because it is in his father's name. They further argue that the machine itself is in the name of the professional corporation and therefore, defendants allege, Ari Weitzner M.D. had and continues to have no right to a reasonable expectation of privacy contemplated for protection under the TCPA.

Plaintiff's rejoinder is that plaintiff's professional corporation pays for invoices on the fax phone line and that it also maintains and repairs the fax machine and pays for all of its paper, ink and supplies. Plaintiff argues, as the sole shareholder in the professional corporation and the sole physician working in the office, these contacts are sufficient to grant him standing to proceed with this case.

Once again, the issue is standing to pursue what type of action (*i.e.,* an individual claim or class action). Pa.R.C.P. 1708 first directs us to determine whether a class action would be a "fair and efficient method of adjudicating the controversy" and it directs us to the criteria therein.

Under Pa.R.C.P. 1708(a), seven criteria are mandated as needing to be considered by the court.

"(a) When monetary recovery alone is sought the court shall consider

"(1) whether common questions of law or fact predominate over any question affecting only individual members;

"(2) the size of the class and the difficulties likely to be encountered in the management of the action as a class action;

"(3) whether the prosecution of separate actions by or against individual members of the class would create risk of

"(i) inconsistent or varying adjudications with respect to individual members of the class which would confront the party opposing the class with incompatible standards of conduct;

"(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or sufficiently impair or impede their ability to protect their interests;

"(4) the extent and nature of any litigation already commenced by or against members of the class involving the same issues;

"(5) whether the particular forum is appropriate for the litigation of the claims of the entire class;

"(6) whether in view of the complexities of the issues or the expenses of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

"(7) whether it is likely that the amount which may be recovered by individual class members will be so small

in relation to expense and effort of administering the action as not to justify a class action.

"(b) Where equitable or declaratory relief alone is sought the court shall consider

"(1) the criteria set forth in subsections (1) though (5) of subdivision (a), and

"(2) whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class.

"(c) where both monetary and other relief is sought, the court shall consider all the criteria in both subdivisions (a) and (b)."

Pa.R.C.P. 1709 discusses the criteria for certification of a class action and deals with the court determining the fairness and adequacy of representation. In view of our decision in this case, this criteria need not be addressed as this matter is rendered moot by our earlier conclusions which will be further justified now.

The factual agreements of counsel have already been noted above and incorporated herein. They are in sum: (1) that the phone line servicing the facsimile machine in the case is not owned by our plaintiff but is owned by Walter Weitzner M.D.; (2) the telephone number in question has never had its ownership transferred from Walter Weitzner M.D. to Ari Weitzner M.D.; (3) the telephone bill and fax machine supplies are paid by Ari Weitzner M.D.'s professional corporation and not per individual plaintiff; and finally (4) our plaintiff Ari Weitzner M.D.

is the sole shareholder and owner of the professional corporation.

These factual agreements lead this court to legally conclude that Ari Weitzner M.D. may be a proper individual plaintiff as a recipient under the TCPA but not a proper representative plaintiff for class action purposes. Our conclusions of law thus follow.

Pa. R.C.P. 1701 and 1702 make it clear that "representative parties" are defined to mean the named parties to the action which represent the class. We are unable to find that Ari Weitzner M.D. can fairly and adequately represent the class and protect the interests of the class due to his unique factual handicap referenced above.

Pursuant to Pa.R.C.P. 1702(2), Dr. Weitzner presents unique and uncommon questions of fact which would not be common to the class. This has raised unique and uncommon defenses against him alone that would not typically be found in the class. For example, we believe that most class members would have unity of ownership among the class members. They would own their phone numbers, pay the phone bills and pay for the fax supplies all from the same ownership entity. In our case, we have an individual plaintiff who does not own the phone number. It is owned by his father and we have a third party professional corporation which pays the bills. We think that this plaintiff's agreed upon facts present an atypical class member scenario and therefore, that makes him a poor representative plaintiff for the class. His status raises unique questions of law and of unique defenses all of which are contrary to Pa.R.C.P.

1702(2) and (4) and contrary to the interests of the class.

The language of Pa.R.C.P. 1702 (1 through 5) is conjunctive and all class action prerequisites must be met. Plaintiff's failure to meet these thresholds disqualifies him from even representing the limited class of Pennsylvania plaintiffs provided for earlier.

This position is further supported by reference to Pa.R.C.P. 1708(a) which also references questions of law and fact. Pa.R.C.P. 1708(a) entitled "Criteria for certification, determination of class action as fair and efficient method of adjudication" states at Pa.R.C.P. 1708, "(a) ... the court shall consider (1) whether common questions of law or fact predominate over any question affecting only individual members." See Pa.R.C.P. 1708(a)(3) (H).

We are asked to consider, "(3) whether the prosecution of separate actions by or against individual members of the class would create a risk of ... (ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of other members ... or substantially impair or impede their ability to protect their interest."

In essence Pa.R.C.P. 1708 asks the court to determine whether common questions of law and fact predominate over individual concerns. It also asks us to determine whether adjudications regarding individual members impair or impede that individual's ability, to protect the class members' interests. Our determination herein is limited to a determination of whether this plaintiff is a

proper representative plaintiff for putative class action purposes. In other words, is plaintiff appropriate to represent "all others similarly situated?" We conclude that this plaintiff is a proper individual plaintiff but an improper representative plaintiff due to his unique factual impairments.

These rules requiring this court to consider numerous criteria in determining whether and how a putative class action should proceed necessarily vest the court with broad discretion. *Debbs v. Chrysler Corp.*, 810 A.2d 137 (Pa. Super. 2002), *appeal denied*, 574 Pa. 744, 829 A.2d 311 (2003).

The trial court's decision concerning class certification is a mixed finding of law and fact entitled to appropriate deference on appeal. *Hayes v. Motorists Mutual Insurance Company*, 370 Pa. Super. 602, 557 A.2d 330 (1987), *appeal denied*, 520 Pa. 606, 533 A.2d 968 (1988). While our decision is restricted to whether this individual plaintiff can be a proper representative plaintiff on behalf of a class, we feel the same standards apply since our determination ultimately impacts on class certification.

We also recognize that the rules for class certification should be made liberally in favor of maintaining class actions. *Debbs v. Chrysler Corp.*, 810 A.2d 137 (Pa. Super. 2002). Despite this guidance, we do not believe that the permissive nature of the TCPA statutory scheme would make state law differences manageable and we also believe that these state-by-state differences would overwhelm the common questions of law and fact. *Id.* at 159.

While we have determined that this representative plaintiff has an excess of individual factual and legal questions to be an appropriate representative plaintiff under our class action rules, we still must balance the interests of the litigants present and absent. *Janicik v. Prudential Insurance Company of America,* 305 Pa. Super. 120, 451 A.2d 451 (1982).

In striking this balance, we conclude that the commonality and claimed homogeneity of this plaintiff with those other potential litigants present and absent within the putative class is lacking. While ostensibly they all may have received unsolicited facsimile transmissions, their status as parties is not jeopardized by the trifurcated problems of a father owning the phone lines and a professional corporation paying the bills and a separate individual acting as a party. Perhaps the specific, individualized and direct nature of our present arguments at issue directed specifically against this plaintiff's problems best typifies why he cannot and should not represent a class. His baggage as a party is so great, it threatens his subjective interests as well as the interests of all others similarly situated and therefore overwhelms his commonality and his ability to represent and protect the interests of others.

Accordingly, this court concludes that Ari Weitzner M.D. may proceed on his individual TCPA claim but not as a representative plaintiff on behalf of others' interests.

D. *What Is the Proper Statute of Limitations?*

Answer: The statute of limitations of the Commonwealth of Pennsylvania should govern.

In order to understand the above-referenced decision, it is necessary to frame this dispute between the parties. As part of their motion for summary judgment, the defendants have claimed that plaintiff's putative class action lawsuit ought to be barred in whole or in part by the statute of limitations.

Defendants quote a chronology which will be summarized here. Defendants relate that plaintiff has defined the class period as from January 2, 2001 until the date of the resolution of this lawsuit. Plaintiff filed his lawsuit on February 14, 2005. Defendants assert that violations of the TCPA are within the jurisdiction of the state courts and thus, Pennsylvania's statute of limitations should govern. That statute found at 42 Pa.C.S. §5524(5) provides for a two-year statute of limitations since the TCPA is generally viewed as an invasion of privacy tort. Defendants therefore conclude that working backwards from the filing date of February 14, 2005, all earlier claims from January 2, 2001 up to February 14, 2003 would be barred by the applicable statute of limitations.

The defendants have framed this matter as a matter of undisputed facts rather than raising it by new matter as directed under Pa.R.C.P. 1030. This is much more than an academic dispute because plaintiff raised at paragraph 9 of his complaint that the first unsolicited facsimile transmission began on April 21, 2001, not January 2, 2001, and that these transmissions were "willfully and knowingly transmitted." (See page 98 of this opinion, *supra.*)

In response to this, the plaintiff alleges that under the TCPA statutory scheme, the federal statute of limitations should govern this dispute. Plaintiff argues that there exists a generic or residual federal statute of limitations where an act passed by Congress fails to specify such a limitation. Plaintiff argues that 28 U.S.C. §1658 provides that, "except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than four years after the cause of action accrues." It is further alleged that the TCPA was adopted in 1991 and therefore, this federal statute of limitations should govern the TCPA cause of action.

In all candor, this court must acknowledge that there exists a diversity of views on this matter and that it could not find any governing Pennsylvania law relative to the narrow issue of whether the TCPA should be governed by a federal or a Pennsylvania statute of limitations.

Much to support our conclusion arises out of our research and our handling of the first issue in this opinion. In dealing with the first issue of whether governing law prevented a TCPA nationwide class action from being maintained in Pennsylvania courts we concluded that the unusual statutory scheme of 47 U.S.C. §227(b)(3) provided a permissive private right of action under the TCPA "if otherwise permitted by the laws or rules of court of a state . . . ."

This expressed congressional intent to make this TCPA private cause of action permissive overcame the Su-

premacy Clause concerns that an Act of Congress represents what is essentially the highest law of the land. In essence, Congress gave the states a pass and let the states be the sole determiner as to whether such a TCPA private cause of action should be allowed to exist within their borders.

We cited the *Gottlieb* case *supra* at pages 101 and 107 of this opinion for the propositions that the TCPA was, "the functional equivalent of state law." 436 F.3d at 342. And further that, "Congress . . . sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps."

The *Holster III* case, *supra* at pages 102 and 107 of this opinion, was cited for its conclusion that, "although the substantive law giving rise to the private cause of action is a federally enacted statute, Congress has rested jurisdiction with the states." 485 F. Supp.2d at 184.

Logically, then it would seem proper that Congress intentionally did not address the statute of limitations issue essentially deferring to the statutory language of 47 U.S.C. §227(b)(3), "if otherwise permitted by the laws or rules of court of a state."

The plaintiff would urge us to find otherwise. The plaintiff takes the position as noted above that there exists a generic or residual statute of limitations at 28 U.S.C. §1658 of four years which is designed to address all actions arising under an Act of Congress, "except as otherwise provided by law." Plaintiff argues that since the TCPA private right of action is devoid of a

specific designated statute of limitations, the phrase, "except as otherwise provided by law" does not apply.

We disagree. This court believes that the phrase, "if otherwise permitted by the laws or rules of court of a state . . ." 47 U.S.C. §227(b)(3) qualifies to meet the exception, "except as otherwise provided by law" found at 28 U.S.C. §1658. Therefore, we believe the generic or residual federal statute of limitations referenced by the plaintiff does not apply to the TCPA because the TCPA would fall within the generic statute of limitation's exception.

This is further supported by our conclusion that the TCPA is the functional equivalent of state law and therefore, the permissive state law statute of limitations should govern. If this provision for the TCPA private cause of action was not permissive, but mandatory, our analysis would differ, however, under the present permissive state jurisdictional statutory scheme, state law or rule of court and the state statute of limitations should control.

The Texas Court of Appeals also agrees with this analysis. In the case of *Chair King Inc. v. GTE,* 135 S.W.3d 365, 340, 391 (2004) in dealing with the same TCPA private right of action statute of limitations, the Texas court stated:

"Under the opt out interpretation of section 227(b)(3) that we now have adopted, parties may assert private TCPA claims in an appropriate state court if state law permits. Therefore, if Texas limitations law does not permit the recipients to pursue their claims . . . then the

recipients' claims are not otherwise permitted by state law.

"Though Congress could have enacted a TCPA private damages claim with a four-year federal limitation period, our federal lawmakers had the flexibility and discretion to enact a statute that allows states to exercise control over these federal claims in the state court system. . . .

"Therefore, we conclude that the residual four-year federal limitations statute does not apply to private TCPA claims."

This case was reversed, but on different grounds at *Chair King Inc. v. GTE*, 184 S.W.3d 707 (2006).

A separate Texas court followed the *Chair King* conclusion of a two-year statute of limitations for private TCPA claims. In the case of *Smith Associates LLP v. Advanced Placement Tear Inc.*, 169 S.W.3d 816, 822 (2005), the court of appeals stated, "We . . . conclude that in a private claim under the TCPA the Texas two-year statute of limitations period applies . . . to Smith's claims under federal law."

We are persuaded by the logic in the statutory scheme, the permissive language in the statute itself and the two Texas cases that the Pennsylvania statute of limitations ought to apply. It is so ordered.

## CONCLUSION

For the reasons and authority stated aforesaid.

(1) Governing law prevents TCPA nationwide class action from being maintained in Pennsylvania courts.

(2) Ari Weitzner M.D. is not an appropriate representative plaintiff to represent, "all others similarly situated" for putative class action purposes.

(3) The two-year Pennsylvania statute of limitations governs private TCPA claims with our Commonwealth.

(4) The remaining individual private TCPA claim of the plaintiff is restricted to any unsolicited facsimile transmissions that were received by plaintiff within two years of the date of the filing of the complaint.

## ORDER

And now, to wit, June 27, 2008, in accordance with the foregoing memorandum, it is hereby ordered and decreed:

(1) Governing law prevents TCPA nationwide class action from being maintained in Pennsylvania courts.

(2) Ari Weitzner M.D. is not an appropriate representative plaintiff to represent, "all others similarly situated" for putative class action purposes.

(3) The two-year Pennsylvania statute of limitations governs private TCPA claims with our Commonwealth.

(4) The remaining individual private TCPA claim of the plaintiff is restricted to any unsolicited facsimile transmissions that were received by plaintiff within two years of the date of the filing of the complaint.